FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CF-3756
(Inmate Number)

WILLIAM BRANCH
(Name of Plaintiff)

SCI-WAYMART P.O. BOX 256
WAYMART, PA 18472-0256
(Address of Plaintiff)

1: CV 01-1356
1- 00-1728
(Case Number)

vs.

CO RUSSIAN, MR FRIEDMAN, CPT GRIFFIN, MRS MARTIN, MS SURACE, MR GORMAN, LT WELLING, PA HEFFERMAN, MR RICHARDS, MR JONES, CPT GAVIN, MR BURKE, PASTOR GAGAS, MR SCALZO, MR HORN, MS WILBUR, MR WALSH, CO KARWOWSKI, MS SUCHY, JOHN DOES *individual & official capacity*
(Names of Defendants)

COMPLAINT

FILED
SCRANTON

JUL 20 2001

PER _____
DEPUTY CLERK

TO BE FILED UNDER:  _X_ 42 U.S.C. § 1983 - STATE OFFICIALS

____ 28 U.S.C. § 1331 - FEDERAL OFFICIALS

I.  Previous Lawsuits

A.  If you have filed any other lawsuits in federal court while a prisoner please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

BRANCH v. DOC, CIVIL ACTION NO: 1:CV-00-1728, 2000
BRANCH v. HORN, ET AL, CIVIL ACTION NO: 1:CV-99-0670, 1999,
BRANCH v. FABERICTORE

SYLVIA H. RAMBO, U.S. DISTRICT JUDGE PRESIDED OVER ALL THREE CASES.

II.  Exhaustion of Administrative Remedies

A.  Is there a grievance procedure available at your institution?
_X_ Yes ___ No

B.  Have you filed a grievance concerning the facts relating to this complaint?
_X_ Yes ___ No

If your answer is no, explain why not  NON APPLICABLE

C.  Is the grievance process completed?  _X_ Yes ___ No

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position the second blank, and his/her place of employment in the third blank. Use Item B for the name positions and places of employment of any additional defendants.)

A.   Defendant   MR. RUSSIAN                                                                  is employe

as CORRECTIONS OFFICER            at   SCI-WAYMART

B.   Additional defendants MR FRIEDMAN, CPT GRIFFIN, MR GORMAN, LT WELLING, PA HEFFERMAN, CPT GAVIN, MR BURKE, PASTOR GAGAS, MS WILBUR, MR WALSH, CO JOHN DOE(S), CO KARWOWSKI, MRS MARTIN, MR RICHARDS, FORMER SECRETARY HORN, MR SKALZO, MS SUCHY, AND HEARING EXAMINER JONES in their official capacity and individual capacity

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involve including dates and places. Do not give any legal arguments or cite any cases or statutes. Attac extra sheets if necessary.)

1.   SEE ATTACHMENTS   7 Pages
Retaliation for reporting misconduct by C/O Russian and conspiracy with Mr Friedman unit manager along with other staff false charges to put me in RHU taking legal work to hinder m
2.   SEE ATTACHMENTS   access to court

3.   SEE ATTACHMENTS   7 Pages

Page A-1

1. ABUSE OF POWER, HARASSMENT, FALSIFYING OFFICIAL DOCUMENTS, CONSPIRACY TO INTIMIDATE IN AN ATTEMPT TO FORCE WITHDRAWAL OF PENDING LAWSUITS, VIOLATIONS OF CONSTITUTIONAL RIGHTS, TO INCLUDE, BUT NOT LIMITED TO ACCESS TO THE COURTS, DENIAL OF THE EXERCISE OF RELIGIOUS FREEDOM, AND DUE PROCESS.

In February 2000, while employed in the Staff Dining Room, I received a write-up based upon false allegations and lies. MS. SUCHY, Kitchen Instructor, accused me of refusing to obey an order and lying to staff. She stated I ordered another prisoner to empty the garbage and return carts to main kitchen. The another prisoner made a written statement to fact the he acted on own, and that he did not take orders from other prisoners. I sent copies of the statement to Mr. Nish. I also advised the hearing officer of statements made by MS. SUCHY of her intentions to get me out of Staff Dining Room, but write-up was still upheld. This Happen as I came up For Parole

In July 2000, while housed on Block M-2, CO RUSSIAN conducted searches of my personal property, leaving it in disarray, stating he could do it per DOC Policy 203, Safety and Security Searches. However the policy permitted the checking of equipment, furniture, electrical outlets, etc, but not the search of personal property. After notifying his Supervisor, CPT GRIFFINS, of the abuses of this policy, CO RUSSIAN retaliated by increasing the frequency and severity of his searches, while also verbally abusing me and instigating rumors about my sexual preference and of my sexual organ size.

I spoke to the psychologist, MR. GORMAN, and filed a grievance. MR. FRIEDMAN was assigned to investigate my claim, which was a conflict of interest because he is a defendant in lawsuit, and is unable to be fair and impartial with his investigation. In the midst of the physical and verbal attacks I was moved from my bottom bunk, to the top one, despite having "bottom bunk status" for medical reasons. The Individual who was moved into the room and placed on the bottom bunk had a history of being argumentative and a very loud snorer. I complained of the situation, and of my belief it was done to try to provoke and/or harass me. My complaints were ignored by MR. FRIEDMAN, who threatened to penalize from the room for being a trouble maker. I voluntarily moved out of the room in an attempt to avoid any disciplinary repercussions. This Happen around April 2001

Once out of the room and into the open dormitory area CO RUSSIAN continued his searches, and verbal harassment, stating to the prisoners on both sides of me that the "fix" was in, implying other staff members were involved in his retaliatory practices. He also stated that Hearing Officer Welby was his uncle. Approximately ten days later I was placed in the RHU based on false accusations by CO RUSSIAN that I had threatened him. These actions of were part of an on-going conspiracy to coerce me into withdrawing my civil lawsuits against the Governor, the DOC, and prison staff.

While in the RHU my special diet meals were tampered with--drink lids opened or loose, bread had a heal imprint on it. Also, the caloric count for my meal was reduced from 2500 to 2000 calories, allegedly at the order of Physician's Assistant Hefferman, who denied authorizing the change. Because I am diabetic I must maintain a strict diet. However, out of fear for my safety at what might have been done to my meals, and due to food that had intentionally been tampered with, I was unable to maintain a proper diet. In addition to the food I was scared to consume, the unauthorized reduction of my required caloric intake combined to jeopardize my health, safety, and well-being.

Also, while in RHU, I was denied access to my legal work which was needed for completing pending civil and criminal actions. Without access to my legal papers I was unable to properly or timely make and file arguments, which resulted in the dismissal of pending injunctions and motions. My criminal cases were also dismissed and/or delayed because of my inability to access legal paperwork, forcing me to take appeals to the next level appellate court, delaying my appeal. I sought the assistance of another, more legally knowledgeable prisoner, which is permissible by DOC Policy, but I was denied. This denial of legal assistance further hindered and frustrated my efforts to access the courts.

After being released from the RHU I was placed on Block C-1 in a room with a prisoner who had a hole in his head, and was a smoker. I am not a smoker, and based on health reasons, I requested to be moved. However, I was forced to remain in this unfavorable situation in hopes of being beaten up or provoked by this individual so that I could be returned to RHU, and for harassment. From C-1 I was placed on D-1, which is a smoking block. Again, I made numerous requests to be moved to a non-smoking block for health reasons. Again, for two weeks my requests were ignored.

In October 2000, I was finally moved to a non-smoking block, F-2, but only after becoming sick and being ordered by medical to be moved. I was placed in a bunk next to a physically larger, and verbally aggressive Muslim prisoner, who continually verbally attacked me and my religion. He also threatened to attack me physically, while spreading rumors about me. Out of fear for my personal safety and for peace of mind, I made numerous efforts to be removed from that hostile environment, which were ignored. Finally, after approaching MRS. MARTIN with my intentions to seek legal redress, I was moved. I was not moved to one of the bunks I requested, but to a top bunk, above another prisoner with a history of violence and destruction of people's personal property.

I advised CO KARWOWSKI, who had been harassing me and provoking other prisoners to harass me, of my bottom bunk status. I let him know that because of my arthritis and tendinitis I was unable to keep climbing up and down from the top bunk, nor could I sit during count with my feet unsupported, but he did nothing. Not only had he placed me in two hostile positions, he also instructed an unknown guard to make an entry on my quarter's card for failing to sit all the way up during count; knowing that health reasons prevented me from doing so.

Again, the medical department ordered that I be moved. Again, I was placed into a hostile situation by CO KARWOWSKI. I was moved from the top bunk to a small, cramped bunk area next to a physically bigger person, who also was verbally aggressive and loud, despite availability of spacier bunk areas. The harassment received on this block was merely a continuation of the on-going attacks against me for filing lawsuits against the Governor, the DOC, and for reporting abuses of prisoners by prison staff. These actions are retaliatory in nature, and intended to force me to withdraw my pending lawsuits. The strong armed, intimidation tactics and harassment used by prison personnel are an abuse of power and violated my constitutional rights, threatened my health, and denied me access to the courts.

2. DENIAL OF EXERCISE OF RELIGIOUS FREEDOM:

[a] During ~~December~~ Sept 2000, I was ordered by CAPTAIN GAVIN to cut my hair, despite notifying prison officials that doing so would violate the exercise of my religious beliefs. On a Sunday I spoke with PASTOR GAGAS, who stated he did not have the time to discuss my haircut exemption. The next day I spoke to MR. BURKE who said I had "no win". Shortly afterward an unknown guard came to my room with a pass, ordering me to go to the barbershop to get my hair cut. I spoke with LT. PATTERSON who advised me to get my hair cut, then contest the exemption policy later.

I had been ordered by CPT GAVIN to get an haircut or go to the RHU without being afforded an opportunity to get approval of a haircut exemption. When I received written confirmation from the Universal Life Church of my "right" to be exempted from cutting my hair because I am a minister. I was still denied a haircut exemption. This denial and forced cutting of my hair were ploys by prison staff to force me to drop pending civil lawsuits through religious persecution and intimidation tactics in violation of my constitutional right to exercise religious freedom.

[B] In ~~May~~ Jan or there about 2001, I was participating in an English Class. I sing in both the Catholic and Protestant Choirs, which practices on Wednesday evenings. The practices are at the same time as the class. I tried to get an "excused" absence for the choir practices, but was denied. MR. WALSH, the school principle, would not grant permission, stating that choir practice was voluntary. The Education Policy allows for an excused absence, once a week, for religious functions. Other prisoners are excused from class to participate in choir practice, but MS. WILBUR forced me to choose between her class or choir practice. This violates the Equal Protection Clause of the freedom to exercise religion. I was singled out for my religious beliefs, and because of the on-going harassment conspiracy against me to force me to withdraw my pending §1983 Lawsuits.

I also want to point out that Capt. Gavin and C/O Helby have over the years been instrumental in a few actions against me which are questionable 2 instances of write up and legal papers being sent out and taken after I asked that they not be sent out

3. VIOLATION OF DUE PROCESS:

While employed in the Garment Plant I requested time off to prepare legal briefs for Civil Action Number 95-CV-00751. The request was approved by my counselor and unit manager. When I told MS. SURACE, she agreed. But, after the brief was completed my brief and tried to return to work, I was placed on lay-in, and not allowed to work for five days. Then, MS. SURACE wrote me up on false charges to have me placed in the RHU in an attempt to force me to withdraw my civil suit against a staff member. Another staff, CO HELBING witnessed her acts. This was done in retaliation to harass me for exercising my constitutional right to access the courts. *Cpt Gavin approved this write*

During the period I was being harassed by CO RUSSIAN I made SUPERINTENDENT COLLERAN aware of the continued attacks. MR. COLLERAN assigned MR. FRIEDMAN to investigate my grievance, knowing that it was a conflict of interest because MR. FRIEDMAN was a defendant in a pending lawsuit, and could not render a fair and impartial ruling. I advised HEARING OFFICER JONES that CO RUSSIANS' write-up was in retaliation for grieving him, and of MR. FRIEDMAN conflict of interest. I also advised MR. GORMAN, CPT GRIFFIN, THE PRC, and SUPERINTENDENT COLLERAN of these facts. But no written statements or acknowledgement were ever made on the record, or were any actions taken on my behalf, denying me due process and fair and impartial adjudication of my claims.

While in the RHU I was denied access to legal papers, which hindered and frustrated my access to the courts, resulting in the dismissal and delaying of my attempts to obtain legal redress for mistreatment received. I was also denied right to receive assistance from another prisoner, more qualified in law, which led to improper filing of motions, pleadings, and answers to wrong court, hindering and frustrating my efforts to access courts.

Also, while in the RHU, I was denied request slips, envelopes, paper, and other needed material to petition the courts and prison officials in order to exhaust administrative remedies. I tried to contact SUPERINTENDENT COLLERAN concerning the situation. LT WELLING came to my cell with my request to MR. COLLERAN, balled it up, and threw it into my cell. He told me not to try to report him or his staff, threatening retaliation if I persisted in trying to communicate with SUPERINTENDENT COLERAN.

As the Secretary of the DOC, MR. HORN, is directly responsible for the actions of all those under him, and ultimately responsible for the conspiratorial acts of harassment that hindered and frustrated my efforts to access the courts and violated my constitutional rights. *as he also is a defendant in my civil suit now stayed in the Third Circuit appeals court*

V. RELIEF:

From at least February 2000 to the present I have been constantly harassed and retaliated against by officials who have abused their power in a concerted effort to deny me access to the courts, and to intimidate me into withdrawing lawsuits against the Governor, Secretary Horn, The DOC, and other prison and state officials. I have endured religious persecution, been placed in the RHU, and suffered mental and verbal harassment. Based on these numerous harassing and retaliatory acts which denied me access to the courts and the freedom to exercise my religious convictions. I pray for the following relief from this Honorable Court:

[1] $200,000 in compensatory damages, and $100,000 in punitive damages.

[2] I want my current Quarter's Card, which contains numerous falsified and exaggerated entries to be destroyed.

[3] I want sanctions, such as suspensions, reprimands, and other disciplinary actions taken against the DOC employees who abused and/or ignored their duties, and an apology from CO RUSSIAN, whom I want barred from positions, such as block officer, that gives him direct authority over prisoners. And for all responsible parties to be held accountable, both individually and officially, for their actions.

I want officials at SCI-Waymart to stop threatening and harassing prisoners for exercising their right to access courts.

I would also pray that this Honorable Court will grant me a change of venue. I believe that because of the extensive interaction between myself and Judge Rambo that she can not be impartial in this matter.

V.  Relief

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. SEE ATTACHMENTS   7- Pages

   I ask for a change of venue as Judge Rambo because of interaction between myself and her may not be impartial in this case

2.

3.

Signed this  21 st  day of  MAY 2001 , 19___.

*William Branch* CF3756
(Signature of Plaintiff)

I declare under penalty of law that I have no money in forma pauperis

I declare under penalty of perjury that the foregoing is true and correct.

_____   *William Branch*
(Date)  MAY 21, 2001   (Signature of Plaintiff)

3