**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **William Branch** | : | |
| **Plaintiff** | : | |
| | : | No. 1:CV 00-1728 |
| v. | : | |
| | : | (Judge Rambo) |
| **CO Russian, et al.** | : | |
| **Defendants** | : | |

FILED
HARRISBURG, PA
OCT 16 2001
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

## DEFENDANTS' ANSWER TO THE COMPLAINT

Defendants, by their attorneys, hereby respond to the averments[1] in the complaint in the above-captioned case as follows:

### FIRST DEFENSE

1. ADMITTED that plaintiff received a misconduct in or about February of 2000. DENIED that the misconduct was based upon false allegations and lies.

2-3. ADMITTED.

4-7. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in these paragraphs; therefore, they are DENIED.

8. ADMITTED that plaintiff's cell was searched in or about July of 2000 pursuant to DC-ADM 203. Each and every remaining averment in this

---

[1] Plaintiff's averments were not presented in numbered paragraphs as required by Rule 10(b). Therefore, for ease of reference, defendants have numbered each averment in the attached complaint and have given their answers to the averments in paragraphs with corresponding numbers.

paragraph is DENIED.

9. The averments in this paragraph are CONCLUSIONS OF LAW which require NO RESPONSE. If deemed factual, they are DENIED.

10. Defendants do not know whether or not plaintiff notified Captain Griffins of his complaints; therefore, they cannot respond to this averment. Each and every remaining averment in this paragraph in DENIED.

11. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this paragraph; therefore they are DENIED.

12. ADMITTED that Mr. Friedman investigated plaintiff's claim. Each and every remaining averment in this paragraph is DENIED.

13-15. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in these paragraphs; therefore, they are DENIED.

16. DENIED.

17-18. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in these paragraphs; therefore, they are DENIED.

19. ADMITTED that plaintiff's living area was subject to searches for security reasons. Each and every remaining averment in this paragraph is

DENIED.

20. DENIED.

21. ADMITTED that plaintiff was placed in the RHU. Each and every remaining averment in this paragraph is DENIED.

22-23. DENIED.

24-27. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in these paragraphs; therefore, they are DENIED.

28. DENIED.

29-32. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in these paragraphs; therefore, they are DENIED.

33. ADMITTED that plaintiff was placed on a block after his release from the RHU. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining averments in this paragraph; therefore, they are DENIED.

34. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this paragraph; therefore, they are DENIED.

35. DENIED that the defendants forced plaintiff to remain in an

unfavorable housing situation or hoped that he would be beaten up, provoked, harassed or returned to the RHU.

36-38.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in these paragraphs, therefore, they are DENIED.

39.  ADMITTED that plaintiff was moved on or about October, 2000. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining averments in this paragraph; therefore, they are DENIED.

40-44.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in these paragraphs; therefore, they are DENIED.

45.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this paragraph concerning plaintiff's alleged communications with Officer Karwowski; therefore, they are DENIED.  DENIED that Officer Karwowski harassed plaintiff or provoked other prisoners to harass him.

46.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this paragraph; therefore, they are DENIED.

47. DENIED.

48. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this paragraph; therefore, they are DENIED.

49. DENIED.

50. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this paragraph; therefore, they are DENIED.

51. DENIED that any of the defendants harassed or attacked plaintiff or caused anyone else to harass or attack him for filing lawsuits, reporting abuses of prisoners by prison staff or for any other reason.

52. DENIED that the defendants retaliated against plaintiff or otherwise took action against plaintiff to force him to withdraw his lawsuits.

53. The averments in this paragraph are LEGAL CONCLUSIONS which require NO RESPONSE. If deemed factual, they are DENIED.

54. ADMITTED that in or about September of 2000, plaintiff was directed to cut his hair. Each and every remaining averments in this paragraph is DENIED.

55-57. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in these paragraphs;

therefore, they are DENIED.

58-59.   DENIED.

60.   Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this paragraph; therefore, they are DENIED.

61.   ADMITTED only that plaintiff was not granted a haircut exemption.

62.   DENIED.

63-67.   Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in these paragraphs, therefore, they are DENIED.

68.   ADMITTED.

69.   Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this paragraph; therefore, they are DENIED.

70.   The averments in this paragraph are CONCLUSIONS OF LAW which require NO RESPONSE. If deemed factual, they are DENIED

71-73.   DENIED.

74-76.   ADMITTED.

77.   Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this paragraph; therefore, they

DENIED.

78-80. DENIED.

81. DENIED that Officer Russian harassed or attacked plaintiff. DENIED that Superintendent Colleran received information showing that plaintiff was subjected to continued attacks.

82. ADMITTED that plaintiff's grievance was investigated. Each and every remaining averment in this paragraph is DENIED.

83. ADMITTED that plaintiff may have communicated his belief that he was a victim of retaliation and his belief that Mr. Friedman could not be fair. Each and every remaining averment in this paragraph is DENIED.

84. ADMITTED that plaintiff shared his views with the PRC.

85. DENIED that plaintiff was denied due process.

86. DENIED that defendants denied plaintiff access to legal papers while he was in the RHU. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining averments in this paragraph; therefore, they are DENIED.

87. DENIED that the defendants denied plaintiff the opportunity to obtain legal assistance from another prisoner. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining averments in this paragraph; therefore, they are DENIED.

88. DENIED that the defendants denied plaintiff request slips, envelopes, paper or other materials needed to petition the courts and prison officials.

89. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this paragraph; therefore, they are DENIED.

90-91. DENIED.

92. The averments in this paragraph are CONCLUSIONS OF LAW which require NO RESPONSE. If deemed factual, they are DENIED.

93. DENIED.

94. ADMITTED that plaintiff was placed in the RHU for refusing to comply with prison rules. Each and every remaining averment in this paragraph is DENIED.

95. DENIED that the defendants harassed plaintiff, subjected him to retaliation, denied him access to the courts or interfered with his right to practice his religion.

96. DENIED that plaintiff is entitled to any relief.

97. Insofar as plaintiff is requesting a change of venue, defendants oppose the request.

98. DENIED that there is any reasonable basis for challenging Judge Rambo's impartiality.

## SECOND DEFENSE

99. The complaint fails to state a claim upon which relief can be granted.

## THIRD DEFENSE

100. The defendants are entitled to qualified immunity.

## FOURTH DEFENSE

101. The plaintiff failed to exhaust all available administrative remedies as required by the PLRA.

                                      Respectfully submitted,

                                      D. MICHAEL FISHER
                                      Attorney General

By: *Gwendolyn T. Mosley* (signature)
                                      GWENDOLYN T. MOSLEY
                                      Senior Deputy Attorney General

                                      SUSAN J. FORNEY
                                      Chief Deputy Attorney General
                                      Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
15th Floor, Strawberry Square
Harrisburg, PA   17120
717-787-8106

DATE: October 16, 2001

AO 440 (Rev. 10/93) Summons in a Civil Case


DEFENDANT'S COPY

# United States District Court
### MIDDLE DISTRICT OF PENNSYLVANIA

## SUMMONS IN A CIVIL CASE

William R. Branch, Plaintiff

CASE NUMBER: 1:CV-00-1728

Judge Rambo

v.

CO Russian; Mr. Friedman; Cpt. Griffin; Mrs. Martin; Ms. Surace; Mr. Gorman; Lt. Welling; PA Hefferman; Mr. Richards; Mr. Jones; Cpt. Gavin; Mr. Burke; Pastor Gagas; Mr. Scalzo; Mr. Horn; Ms. Wilbur; Mr. Walsh; CO Karwowski; Ms. Suchy; and JOHN DOES, individual and official capacity, Defendants

To: (For the name and address of defendant(s): **SEE COMPLAINT**)

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY William R. Branch, CF-3756, SCI-WAYMART, P.O. Box 256, Route 6, Waymart, PA 18472-0256

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MARY E. D'ANDREA, Clerk           DATE: July 31, 2001

(By) Ann Severino-Michael, Deputy Clerk

COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE *MIDDLE* DISTRICT OF PENNSYLVANIA

**3: CV 01-1135**

Name and address of Plaintiff:
BAKER-BELL ID #EL-7575
3001 BEAVER AVE
PITTSBURGH PENN. 15233

v.

Full name, title, and business address
of each defendant in this action:
1. JEFFREY A. BEARD, PhD SECRETARY
   2520 LISBURN RD
   CAMP HILL, PENN. 17001

2. [illegible] SUPERINTENDENT
   2520 LISBURN RD
   CAMP HILL, PENN. 17001

(use additional sheets, if necessary.
Number each defendant.)

SUED IN INDIVIDUAL AND
OFFICIAL CAPACITIES. THE
STATE COURT OF THE [illegible]
[illegible] RULES OF [illegible]
DEPRIVATION, [illegible]
CLAIMS PENDANT JURISDICTION
SUED PURSUANT TO TITLE
U.S.C. 19 [illegible] 1984, 1985 [illegible]

SCRANTON

JUN 2 2001

PER [signature]
DEPUTY CLERK

Plaintiff brings this action against the above named and identified defendants on the following cause of action:

I.  Where are you now confined? S.C.I. PITTSBURGH

    What sentence are you serving? 5 TO 10 YEARS

    What court imposed the sentence? DELAWARE COUNTY

II. Previous Lawsuits
    A. Describe any and all lawsuits in which you are a plaintiff which deal with the same facts involved in this action. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

    1. Parties to the previous lawsuit

    Plaintiffs: N/A

    Defendants: N/A

    2. Court (if federal court, name the district; if state court, name the county) and docket number.

    N/A

ROBERT NOVOTNEY, DEPUTY SUPERINTENDENT A.H.
2500 LISBURN RD
CAMP HILL, PENN. 17011

DAVID S. NOETZEL, BUSINESS OFFICE A.H.
2500 LISBURN RD
CAMP HILL, PENN. 17011

Page A-1

1. ABUSE OF POWER, HARASSMENT, FALSIFYING OFFICIAL DOCUMENTS, CONSPIRACY TO INTIMIDATE IN AN ATTEMPT TO FORCE WITHDRAWAL OF PENDING LAWSUITS, VIOLATIONS OF CONSTITUTIONAL RIGHTS, TO INCLUDE, BUT NOT LIMITED TO ACCESS TO THE COURTS, DENIAL OF THE EXERCISE OF RELIGIOUS FREEDOM, AND DUE PROCESS.

1. In February 2000, while employed in the Staff Dining Room, I received a write-up based upon false allegations and lies. 2. MS. SUCHY, Kitchen Instructor, accused me of refusing to obey an order and lying to staff. 3. She stated I ordered another prisoner to empty the garbage and return carts to main kitchen. 4. The another prisoner made a written statement to fact the he acted on own, and that he did not take orders from other prisoners. 5. I sent copies of the statement to Mr. Nish. 6. I also advised the hearing officer of statements made by MS. SUCHY of her intentions to get me out of Staff Dining Room, but write-up was still upheld. 7. This happen as I came up for Parole

8. In July 2000, while housed on Block M-2, CO RUSSIAN conducted searches of my personal property, leaving it in disarray, stating he could do it per DOC Policy 203, Safety and Security Searches. 9. However the policy permitted the checking of equipment, furniture, electrical outlets, etc, but not the search of personal property. 10. After notifying his Supervisor, CPT GRIFFINS, of the abuses of this policy, CO RUSSIAN retaliated by increasing the frequency and severity of his searches, while also verbally abusing me and instigating rumors about my sexual preference and of my sexual organ size.

11. I spoke to the psychologist, MR. GORMAN, and filed a grievance. 12. MR. FRIEDMAN was assigned to investigate my claim, which was a conflict of interest because he is a defendant in lawsuit, and is unable to be fair and impartial with his investigation. 13. In the midst of the physical and verbal attacks I was moved from my bottom bunk, to the top one, despite having "bottom bunk status" for medical reasons. 14. The Individual who was moved into the room and placed on the bottom bunk, had a history of being argumentative and a very loud snorer. 15. I complained of the situation, and of my belief it was done to try to provoke and/or harass me. 16. My complaints were ignored by MR. FRIEDMAN, who threatened to penalize from the room for being a trouble maker. 17. I voluntarily moved out of the room in an attempt to avoid any disciplinary repercussions. 18. This happen around April 2001

19

[19] Once out of the room and into the open dormitory area CO RUSSIAN continued his searches, and verbal harassment, stating to the prisoners on both sides of me that the "fix" was in, implying other staff members were involved in his retaliatory practices. [20] He also stated that Hearing Officer Welby was his uncle. [21] Approximately ten days later I was placed in the RHU based on false accusations by CO RUSSIAN that I had threatened him. [22] These actions of were part of an on-going conspiracy to coerce me into withdrawing my civil lawsuits against the Governor, the DOC, and prison staff.

[23] While in the RHU my special diet meals were tampered with--drink lids opened or loose, bread had a heal imprint on it. [24] Also, the caloric count for my meal was reduced from 2500 to 2000 calories, allegedly at the order of Physician's Assistant Hefferman, who denied authorizing the change. [25] Because I am diabetic I must maintain a strict diet. [26] However, out of fear for my safety at what might have been done to my meals, and due to food that had intentionally been tampered with, I was unable to maintain a proper diet. [27] In addition to the food I was scared to consume, the unauthorized reduction of my required caloric intake combined to jeopardize my health, safety, and well-being.

[28] Also, while in RHU, I was denied access to my legal work which was needed for completing pending civil and criminal actions. [29] Without access to my legal papers I was unable to properly or timely make and file arguments, which resulted in the dismissal of pending injunctions and motions. [30] My criminal cases were also dismissed and/or delayed because of my inability to access legal paperwork, forcing me to take appeals to the next level appellate court, delaying my appeal. [31] I sought the assistance of another, more legally knowledgeable prisoner, which is permissible by DOC Policy, but I was denied. [32] This denial of legal assistance further hindered and frustrated my efforts to access the courts.

[33] After being released from the RHU I was placed on Block C-1 in a room with a prisoner who had a hole in his head, and was a smoker. [34] I am not a smoker, and based on health reasons, I requested to be moved. [35] However, I was forced to remain in this unfavorable situation in hopes of being beaten up or provoked by this individual so that I could be returned to RHU, and for harassment. [36] From C-1 I was placed on D-1, which is a smoking block. [37] Again, I made numerous requests to be moved to a non-smoking block for health reasons. [38] Again, for two weeks my requests were ignored.

39. In October 2000, I was finally moved to a non-smoking block, F-2, but only after becoming sick and being ordered by medical to be moved. 40. I was placed in a bunk next to a physically larger, and verbally aggressive Muslim prisoner, who continually verbally attacked me and my religion. 41. He also threatened to attack me physically, while spreading rumors about me. 42. Out of fear for my personal safety and for peace of mind, I made numerous efforts to be removed from that hostile environment, which were ignored. 43. Finally, after approaching MRS. MARTIN with my intentions to seek legal redress, I was moved. 44. I was not moved to one of the bunks I requested, but to a top bunk, above another prisoner with a history of violence and destruction of people's personal property.

45. I advised CO KARWOWSKI, who had been harassing me and provoking other prisoners to harass me, of my bottom bunk status. 46. I let him know that because of my arthritis and tendinitis I was unable to keep climbing up and down from the top bunk, nor could I sit during count with my feet unsupported, but he did nothing. 47. Not only had he placed me in two hostile positions, he also instructed an unknown guard to make an entry on my quarter's card for failing to sit all the way up during count; knowing that health reasons prevented me from doing so.

48. Again, the medical department ordered that I be moved. 49. Again, I was placed into a hostile situation by CO KARWOWSKI. 50. I was moved from the top bunk to a small, cramped bunk area next to a physically bigger person, who also was verbally aggressive and loud, despite availability of spacier bunk areas. 51. The harassment received on this block was merely a continuation of the on-going attacks against me for filing lawsuits against the Governor, the DOC, and for reporting abuses of prisoners by prison staff. 52. These actions are retaliatory in nature, and intended to force me to withdraw my pending lawsuits. 53. The strong armed, intimidation tactics and harassment used by prison personnel are an abuse of power and violated my constitutional rights, threatened my health, and denied me access to the courts.

## 2. DENIAL OF EXERCISE OF RELIGIOUS FREEDOM:

54 [a] During Sept 2000, I was ordered by CAPTAIN GAVIN to cut my hair, despite notifying prison officials that doing so would violate the exercise of my religious beliefs. 55 On a Sunday I spoke with PASTOR GAGAS, who stated he did not have the time to discuss my haircut exemption. 56 The next day I spoke to MR. BURKE who said I had "no win". 57 Shortly afterward an unknown guard came to my room with a pass, ordering me to go to the barbershop to get my hair cut. 58 I spoke with LT. PATTERSON who advised me to get my hair cut, then contest the exemption policy later.

59 I had been ordered by CPT GAVIN to get an haircut or go to the RHU without being afforded an opportunity to get approval of a haircut exemption. 60 When I received written confirmation from the Universal Life Church of my "right" to be exempted from cutting my hair because I am a minister. 61 I was still denied a haircut exemption. 62 This denial and forced cutting of my hair were ploys by prison staff to force me to drop pending civil lawsuits through religious persecution and intimidation tactics in violation of my constitutional right to exercise religious freedom.

[B] 63 In May 2001 (Jun or there about), I was participating in an English Class. 64 I sing in both the Catholic and Protestant Choirs, which practices on Wednesday evenings. 65 The practices are at the same time as the class. 66 I tried to get an "excused" absence for the choir practices, but was denied. 67 MR. WALSH, the school principle, would not grant permission, stating that choir practice was voluntary. 68 The Education Policy allows for an excused absence, once a week, for religious functions. 69 Other prisoners are excused from class to participate in choir practice, but MS. WILBUR forced me to choose between her class or choir practice. 70 This violates the Equal Protection Clause of the freedom to exercise religion. 71 I was singled out for my religious beliefs, and because of the on-going harassment conspiracy against me to force me to withdraw my pending §1983 Lawsuits.

72 I also want to point out that Capt. Gavin and C/O Helbey have over the years been instrumental in a few actions against me which are questionable

73 2 instances of write up and legal papers being sent out and taken after I asked that they not be sent out.

3. VIOLATION OF DUE PROCESS:

74. While employed in the Garment Plant I requested time off to prepare legal briefs for Civil Action Number 95-CV-00751. 75. The request was approved by my counselor and unit manager. When I told MS. SURACE, she agreed. 76. But, after the brief was completed my brief and tried to return to work, I was placed on lay-in, and not allowed to work for five days. 77. Then, MS. SURACE wrote me up on false charges to have me placed in the RHU in an attempt to force me to withdraw my civil suit against a staff member. 78. Another staff, CO HELBING witnessed her acts. Cpt Griffin approved the write [up] 79. This was done in retaliation to harass me for exercising my constitutional right to access the courts.

80. During the period I was being harassed by CO RUSSIAN I made SUPERINTENDENT COLLERAN aware of the continued attacks. 82. MR. COLLERAN assigned MR. FRIEDMAN to investigate my grievance, knowing that it was a conflict of interest because MR. FRIEDMAN was a defendant in a pending lawsuit, and could not render a fair and impartial ruling. 83. I advised HEARING OFFICER JONES that CO RUSSIANS' write-up was in retaliation for grieving him, and of MR. FRIEDMAN conflict of interest. 84. I also advised MR. GORMAN, CPT GRIFFIN, THE PRC, and SUPERINTENDENT COLLERAN of these facts. 85. But no written statements or acknowledgement were ever made on the record, or were any actions taken on my behalf, denying me due process and fair and impartial adjudication of my claims.

86. While in the RHU I was denied access to legal papers, which hindered and frustrated my access to the courts, resulting in the dismissal and delaying of my attempts to obtain legal redress for mistreatment received. 87. I was also denied right to receive assistance from another prisoner, more qualified in law, which led to improper filing of motions, pleadings, and answers to wrong court, hindering and frustrating my efforts to access courts.

88. Also, while in the RHU, I was denied request slips, envelopes, paper, and other needed material to petition the courts and prison officials in order to exhaust administrative remedies. 89. I tried to contact SUPERINTENDENT COLLERAN concerning the situation. 90. LT WELLING came to my cell with my request to MR. COLLERAN, balled it up, and threw it into my cell. 91. He told me not to try to report him or his staff, threatening retaliation if I persisted in trying to communicate with SUPERINTENDENT COLERAN.

92. As the Secretary of the DOC, MR. HORN, is directly responsible for the actions of all those under him, and ultimately responsible for the conspiratorial acts of harassment that hindered and frustrated my efforts to access the courts and violated my constitutional rights. as he also is a defendant in my civil suit now stayed in the third circuit appeals court

## V. RELIEF:

93) From at least February 2000 to the present I have been constantly harassed and retaliated against by officials who have abused their power in a concerted effort to deny me access to the courts, and to intimidate me into withdrawing lawsuits against the Governor, Secretary Horn, The DOC, and other prison and state officials. 94) I have endured religious persecution, been placed in the RHU, and suffered mental and verbal harassment. 95) Based on these numerous harassing and retaliatory acts which denied me access to the courts and the freedom to exercise my religious convictions. 96) I pray for the following relief from this Honorable Court:

[1] $200,000 in compensatory damages, and $100,000 in punitive damages.

[2] I want my current Quarter's Card, which contains numerous falsified and exaggerated entries to be destroyed.

[3] I want sanctions, such as suspensions, reprimands, and other disciplinary actions taken against the DOC employees who abused and/or ignored their duties, and an apology from CO RUSSIAN, whom I want barred from positions, such as block officer, that gives him direct authority over prisoners. And for all responsible parties to be held accountable, both individually and officially, for their actions.

I want officials at SCI-Waymart to stop threatening and harassing prisoners for exercising their right to access courts.

97) I would also pray that this Honorable Court will grant me a change of venue. 98) I believe that because of the extensive interaction between myself and Judge Rambo that she can not be impartial in this matter.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **William Branch**<br>　　　**Plaintiff** | :<br>:<br>: |
| v. | No. 1:CV 01-1728<br>:<br>: |
| **CO Russian, et al.**<br>　　　**Defendants** | (Judge Rambo)<br>:<br>:<br>: |

### CERTIFICATE OF SERVICE

I, **GWENDOLYN T. MOSLEY,** Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on **October 16, 2001**, I caused to be served a true and correct copy of the foregoing document **Defendants' Answer to the Complaint** by depositing it in the United States mail, first-class postage prepaid to the following:

William Branch, #CF-3756
SCI-Waymart
P.O. Box 256
Waymart, PA 18472

_____
**GWENDOLYN T. MOSLEY**
**Senior Deputy Attorney General**