IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM BRANCH           :       CIVIL ACTION

V.                       :       NO. CV-00-1728

NEIL HEFFERMAN, P.A., et al.   :       (Judge Rambo)


EXHIBITS OF NEIL HEFFERMAN, P.A. IN SUPPORT OF HIS
ANSWER AND MEMORANDUM OF LAW IN OPPOSITION TO
WILLIAM BRANCH'S MOTION FOR RECONSIDERATION


FILED
SCRANTON

NOV 2 9 2001

PER _____
        DEPUTY CLERK

FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CF-3756
(Inmate Number)

1: CV 01-1356

WILLIAM BRANCH
(Name of Plaintiff)
SCI-WAYMART P.O. BOX 256
WAYMART, PA 18472-0256

(Address of Plaintiff)

1- 00 - 1728
(Case Number)

vs.

CO RUSSIAN, MR FRIEDMAN, CPT GRIFFIN, MRS MARTIN, MS SURACE,
MR GORMAN, LT WELLING, PA HEFFERMAN, MR RICHARDS, MR JONES,
CPT GAVIN, MR BURKE, PASTOR GAGAS, MR SCALZO, MR HORN,
MS WILBUR, MR WALSH, CO KARWONSKI, MS SUCHY, JOHN DOES *individual & official Capacity*
(Names of Defendants)

COMPLAINT

FILED
SCRANTON
JUL 2 0 2001
PER _____
DEPUTY CLERK

TO BE FILED UNDER:  _X_  42 U.S.C. § 1983 - STATE OFFICIALS

_____  28 U.S.C. § 1331 - FEDERAL OFFICIALS

I.    Previous Lawsuits

A.    If you have filed any other lawsuits in federal court while a prisoner please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

BRANCH v. DOC, CIVIL ACTION NO: 1:CV-00-1728, 2000
BRANCH v. HORN, ET AL. CIVIL ACTION NO: 1:CV-99-0670, 1999,
BRANCH v. FABERICTORE

SYLVIA H. RAMBO, U.S. DISTRICT JUDGE PRESIDED OVER ALL THREE
CASES.

II.   Exhaustion of Administrative Remedies

A.    Is there a grievance procedure available at your institution?
      _X_ Yes  ____ No

B.    Have you filed a grievance concerning the facts relating to this complaint?
      _X_ Yes  ____ No

      If your answer is no, explain why not  NON APPLICABLE

C.    Is the grievance process completed?  _X_ Yes  ____ No

**III.** Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position the second blank, and his/her place of employment in the third blank. Use Item B for the name positions and places of employment of any additional defendants.)

A.    Defendant   MR. RUSSIAN _____ is employe

as CORRECTIONS OFFICER _____ at   SCI-WAYMART _____

B.    Additional defendants MR FRIEDMAN, CPT GRIFFIN, MR GORMAN, LT WELLING,

PA HEFFERMAN, CPT GAVIN, MR BURKE, PASTOR GAGAS, MS WILBUR, MR. WALSH,

CO JOHN DOE(S), CO KARWOWSKI, MRS MARTIN, MR RICHARDS, FORMER SECRETARY HORN,

MR SKALZO, MS SUCHY, AND HEARING EXAMINER JONES *in their official*

*~~capacity~~ capacity and individual capacity*

**IV.** Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involve including dates and places. Do not give any legal arguments or cite any cases or statutes. Attac extra sheets if necessary.)

1.    SEE ATTACHMENTS    *7 Pages*

*Retaliation for reporting misconduct by*
*C/o Russian and conspiracy with Mr Friedman*
*Unit manger along with other staff false charges*
*to put me in RHU taking legal work to hinder me*

2.    SEE ATTACHMENTS   *access to court*

3.    SEE ATTACHMENTS   *7 Pages*

Page A-1

1. ABUSE OF POWER, HARASSMENT, FALSIFYING OFFICIAL DOCUMENTS, CONSPIRACY TO INTIMIDATE IN AN ATTEMPT TO FORCE WITHDRAWAL OF PENDING LAWSUITS, VIOLATIONS OF CONSTITUTIONAL RIGHTS, TO INCLUDE, BUT NOT LIMITED TO ACCESS TO THE COURTS, DENIAL OF THE EXERCISE OF RELIGIOUS FREEDOM, AND DUE PROCESS.

In February 2000, while employed in the Staff Dining Room, I received a write-up based upon false allegations and lies. MS. SUCHY, Kitchen Instructor, accused me of refusing to obey an order and lying to staff. She stated I ordered another prisoner to empty the garbage and return carts to main kitchen. The another prisoner made a written statement to fact the he acted on own, and that he did not take orders from other prisoners. I sent copies of the statement to Mr. Nish. I also advised the hearing officer of statements made by MS. SUCHY of her intentions to get me out of Staff Dining Room, but write-up was still upheld. This Happen as I came up for Parole

In July 2000, while housed on Block M-2, CO RUSSIAN conducted searches of my personal property, leaving it in disarray, stating he would do it per DOC Policy 503, Safety and Security Searches. However the policy permitted the checking of equipment, furniture, electrical outlets, etc, but not the search of personal property. After notifying his Supervisor, CPT GRIFFINS, of the abuses of this policy, CO RUSSIAN retaliated by increasing the frequency and severity of his searches, while also verbally abusing me and insticating rumors about my sexual preference and of my sexual organ size.

I spoke to the psychologist, MR. GORMAN, and filed a grievance. MR. FRIEDMAN was assigned to investigate my claim, which was a conflict of interest because he is a defendant in lawsuit, and is unable to be fair and impartial with his investigation. In the midst of the physical and verbal attacks I was moved from my bottom bunk, to the top one, despite having "bottom bunk status" for medical reasons. The Individual who was moved into the room and placed on the bottom bunk had a history of being argumentative and a very loud snorer. I complained of the situation, and of my belief it was done to try to provoke and/or harass me. My complaints were ignored by MR. FRIEDMAN, who threatened to penalize from the room for being a trouble maker. I voluntarily moved out of the room in an attempt to avoid any disciplinary repercussions. This Happen around APRIL 2001

Once out of the room and into the open dormitory area CO RUSSIAN continued his searches, and verbal harassment, stating to the prisoners on both sides of me that the "fix" was in, implying other staff members were involved in his retaliatory practices. He also stated that Hearing Officer Welby was his uncle. Approximately ten days later I was placed in the RHU based on false accusations by CO RUSSIAN that I had threatened him. These actions of were part of an on-going conspiracy to coerce me into withdrawing my civil lawsuits against the Governor, the DOC, and prison staff.

While in the RHU my special diet meals were tampered with--drink lids opened or loose, bread had a heal imprint on it. Also, the caloric count for my meal was reduced from 2500 to 2000 calories, allegedly at the order of Physician's Assistant Hefferman, who denied authorizing the change. Because I am diabetic I must maintain a strict diet. However, out of fear for my safety at what might have been done to my meals, and due to food that had intentionally been tampered with, I was unable to maintain a proper diet. In addition to the food I was scared to consume, the unauthorized reduction of my required caloric intake combined to jeopardize my health, safety, and well-being.

Also, while in RHU, I was denied access to my legal work which was needed for completing pending civil and criminal actions. Without access to my legal papers I was unable to properly or timely make and file arguments, which resulted in the dismissal of pending injunctions and motions. My criminal cases were also dismissed and/or delayed because of my inability to access legal paperwork, forcing me to take appeals to the next level appellate court, delaying my appeal. I sought the assistance of another, more legally knowledgeable prisoner, which is permissible by DCC Policy, but I was denied. This denial of legal assistance further hindered and frustrated my efforts to access the courts.

After being released from the RHU I was placed on Block C-1 in a room with a prisoner who had a hole in his head, and was a smoker. I am not a smoker, and based on health reasons, I requested to be moved. However, I was forced to remain in this unfavorable situation in hopes of being beaten up or provoked by this individual so that I could be returned to RHU, and for harassment. From C-1 I was placed on D-1, which is a smoking block. Again, I made numerous requests to be moved to a non-smoking block for health reasons. Again, for two weeks my requests were ignored.

In October 2000, I was finally moved to a non-smoking block, F-2, but only after becoming sick and being ordered by medical to be moved. I was placed in a bunk next to a physically larger, and verbally aggressive Muslim prisoner, who continually verbally attacked me and my religion. He also threatened to attack me physically, while spreading rumors about me. Out of fear for my personal safety and for peace of mind, I made numerous efforts to be removed from that hostile environment, which were ignored. Finally, after approaching MRS. MARTIN with my intentions to seek legal redress, I was moved. I was not moved to one of the bunks I requested, but to a top bunk, above another prisoner with a history of violence and destruction of people's personal property.

I advised CO KARWOWSKI, who had been harassing me and provoking other prisoners to harass me, of my bottom bunk status. I let him know that because of my arthritis and tendinitis I was unable to keep climbing up and down from the top bunk, nor could I sit during count with my feet unsupported, but he did nothing. Not only had he placed me in two hostile positions, he also instructed an unknown guard to make an entry on my quarter's card for failing to sit all the way up during count, knowing that health reasons prevented me from doing so.

Again, the medical department ordered that I be moved. Again, I was placed into a hostile situation by CO KARWOWSKI. I was moved from the top bunk to a small, cramped bunk area next to a physically bigger person, who also was verbally aggressive and loud, despite availability of spacier bunk areas. The harassment received on this block was merely a continuation of the on-going attacks against me for filing lawsuits against the Governor, the DOC, and for reporting abuses of prisoners by prison staff. These actions are retaliatory in nature, and intended to force me to withdraw my pending lawsuits. The strong armed, intimidation tactics and harassment used by prison personnel are an abuse of power and violated my constitutional rights, threatened my health, and denied me access to the courts.

## 2. DENIAL OF EXERCISE OF RELIGIOUS FREEDOM:

[a] During ~~December~~ Sept 2000, I was ordered by CAPTAIN GAVIN to cut my hair, despite notifying prison officials that doing so would violate the exercise of my religious beliefs. On a Sunday I spoke with PASTOR GAGAS, who stated he did not have the time to discuss my haircut exemption. The next day I spoke to MR. BURKE who said I had "no win". Shortly afterward an unknown guard came to my room with a pass, ordering me to go to the barbershop to get my hair cut. I spoke with LT. PATTERSON who advised me to get my hair cut, then contest the exemption policy later.

I had been ordered by CPT GAVIN to get an haircut or go to the RHU without being afforded an opportunity to get approval of a haircut exemption. When I received written confirmation from the Universal Life Church of my "right" to be exempted from cutting my hair because I am a minister. I was still denied a haircut exemption. This denial and forced ~~cutting of my hair were ploys by prison staff to force me to~~ drop pending civil lawsuits through religious persecution and intimidation tactics in violation of my constitutional right to exercise religious freedom.

[B] In ~~May~~ for or there about 2001, I was participating in an English Class. I sing in both the Catholic and Protestant Choirs, which practices on Wednesday evenings. The practices are at the same time as the class. I tried to get an "excused" absence for the choir practices, but was denied. MR. WALSH, the school principle, would not grant permission, stating that choir practice was voluntary. The Education Policy allows for an excused absence, once a week, for religious functions. Other prisoners are excused from class to participate in choir practice, but MS. WILBUR forced me to choose between her class or choir practice. This violates the Equal Protection Clause of the freedom to exercise religion. I was singled out for my religious beliefs, and because of the on-going harassment conspiracy against me to force me to withdraw my pending §1983 Lawsuits.

I also want to point out that Capt. gavin and C/o Helby have over the years been instrumental in a few actions against me which are questionable 2 instances of write up and legal papers being sent out and taken after I asked that they not be sent out.

### 3. VIOLATION OF DUE PROCESS:

While employed in the Garment Plant I requested time off to prepare legal briefs for Civil Action Number 95-CV-00751. The request was approved by my counselor and unit manager. When I told MS. SURACE, she agreed. But, after the brief was completed my brief and tried to return to work, I was placed on lay-in, and not allowed to work for five days. Then, MS. SURACE wrote me up on false charges to have me placed in the RHU in an attempt to force me to withdraw my civil suit against a staff member. Another staff, CO HELBING witnessed her acts. This was done in retaliation to harass me for exercising my constitutional right to access the courts.

*Cpt Griffin approved this write* [handwritten margin note]

During the period I was being harassed by CO RUSSIAN I made SUPERINTENDENT COLLERAN aware of the continued attacks. MR. COLLERAN assigned MR. FRIEDMAN to investigate my grievance, knowing that it was a conflict of interest because MR. FRIEDMAN was a defendant in a pending lawsuit, and could not render a fair and impartial ruling. I advised HEARING OFFICER JONES that CO RUSSIANS' write-up was in retaliation for grieving him, and of MR. FRIEDMAN conflict of interest. I also advised MR. GORMAN, CPT GRIFFIN, THE PRC, and SUPERINTENDENT COLLERAN of these facts. But no written statements or acknowledgement were ever made on the record, or were any actions taken on my behalf, denying me due process and fair and impartial adjudication of my claims.

While in the RHU I was denied access to legal papers, which hindered and frustrated my access to the courts, resulting in the dismissal and delaying of my attempts to obtain legal redress for mistreatment received. I was also denied right to receive assistance from another prisoner, more qualified in law, which led to improper filing of motions, pleadings, and answers to wrong court, hindering and frustrating my efforts to access courts.

Also, while in the RHU, I was denied request slips, envelopes, paper, and other needed material to petition the courts and prison officials in order to exhaust administrative remedies. I tried to contact SUPERINTENDENT COLLERAN concerning the situation. LT WELLING came to my cell with my request to MR. COLLERAN, balled it up, and threw it into my cell. He told me not to try to report him or his staff, threatening retaliation if I persisted in trying to communicate with SUPERINTENDENT COLERAN.

As the Secretary of the DOC, MR. HORN, is directly responsible for the actions of all those under him, and ultimately responsible for the conspiratorial acts of harassment that hindered and frustrated my efforts to access the courts and violated my constitutional rights. *as he also is a defendant in my civil suit now stayed in the Third Circuit appeals court* [handwritten]

## V. RELIEF:

From at least February 2000 to the present I have been constantly harassed and retaliated against by officials who have abused their power in a concerted effort to deny me access to the courts, and to intimidate me into withdrawing lawsuits against the Governor, Secretary Horn, The DOC, and other prison and state officials. I have endured religious persecution, been placed in the RHU, and suffered mental and verbal harassment. Based on these numerous harassing and retaliatory acts which denied me access to the courts and the freedom to exercise my religious convictions, I pray for the following relief from this Honorable Court:

[1] $200,000 in compensatory damages, and $100,000 in punitive damages.

[2] I want my current Quarter's Card, which contains numerous falsified and exaggerated entries to be destroyed.

[3] I want sanctions, such as suspensions, reprimands, and other disciplinary actions taken against the DOC employees who abused and/or ignored their duties, and an apology from CO RUSSIAN, whom I want barred from positions, such as block officer, that gives him direct authority over prisoners. And for all responsible parties to be held accountable, both individually and officially, for their actions.

I want officials at SCI-Waymart to stop threatening and harassing prisoners for exercising their right to access courts.

I would also pray that this Honorable Court will grant me a change of venue. I believe that because of the extensive interaction between myself and Judge Rambo that she can not be impartial in this matter.

**V.    Relief**

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

1.    SEE ATTACHMENTS    *7- Pages*

I ask for a change of venue as Judge Rambo because of interaction between myself and her may not be impartial in this case

2.

3.

Signed this ___21 st___ day of ___MAY  2001_____, 19___.

*William Branch  CF 3756*
(Signature of Plaintiff)

*I declare under Penalty of Law that I have no money in forma pauperis*

I declare under penalty of perjury that the foregoing is true and correct.

*William Branch*

____MAY 21, 2001____                    _____
(Date)                                  (Signature of Plaintiff)

3

1084

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM R. BRANCH,  :
      Plaintiff :   CIVIL NO. 1:CV-00-1728
               :
   v. :   (Judge Rambo)
               :
MR. RUSSIAN, *et al.*, :
      Defendants :

**FILED**
HARRISBURG, PA

NOV 06 2001

### MEMORANDUM

MARY E. D'ANDREA, CLERK
Per _____
         Deputy Clerk

      Before the court is a motion to dismiss filed by defendant Neil Hefferman, a physician's assistant ("P.A.") on August 28, 2001. Because Plaintiff has failed to state a viable claim as to Hefferman, the motion to dismiss will be granted.

## I. Background

      Plaintiff, William Branch, an inmate confined at the State Correctional Institution, Waymart, Pennsylvania, ("SCI-Waymart") filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff was directed by this court to file an amended complaint. Due to a clerical error, the amended complaint was initially docketed as a new complaint. By court order dated July 21, 2001, this court corrected the error and directed the U.S. Marshal to serve Defendants with the amended complaint. (Doc. 22,

Amended Complaint.)  Named as Defendants in the complaint are Correctional Officer Russian, Mr. Friedman, Captain Griffin, Mrs. Martin, Ms. Surace, Mr. Gorman, Lt. Welling, Neil Hefferman, P.A., Mr. Richards, Mr. Jones, Captain Gavin, Mr. Burke, Pastor Gagas, Mr. Scalzo, Mr. Horn, Ms. Wilbur, Mr. Walsh, Correctional Officer Karkowski, Ms. Suchy, and various John Does.  (Doc. 22, p. 2.)

Branch completed this court's form application to proceed *in forma pauperis* and authorization to have funds deducted from his account.  The Prison Litigation Reform Act (the "PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996), imposed new obligations on prisoners who file suit in federal court and wish to proceed *in forma pauperis* under 28 U.S.C. § 1915, *e.g.*, the full filing fee ultimately must be paid (at least in a non-habeas suit).[1]

The complaint contends that Defendants who were prison officials or prison employees violated constitutional rights of Branch, including harassing him, falsifying official documents, denying him bottom bunk status, forcing him to inhabit an area where he was subject to smoke, forcing him to cut his hair despite his religious beliefs, prohibiting from participating in religious services, and denying him access to legal papers.  Plaintiff does not allege in his complaint that Hefferman participated in any of those conducts.

---

1.    The court issued an administrative order directing the warden of SCI Waymart to commence deducting the full filing fee from plaintiff's prison trust fund account.

The only averments in the complaint of Branch directed to Hefferman appear at A-2 of his complaint. Plaintiff states that Hefferman "allegedly" ordered the reduction of the caloric count for his meals from 2,500 to 2,000 calories. (Doc. 22, A-2.) Plaintiff further states that Hefferman denied authorizing the change. The complaint does not identify how many meals were affected by the change.

In his brief in support of his motion to dismiss, Defendant Hefferman raises three grounds as to why he should be dismissed from the instant action. First, Hefferman contends that Plaintiff has not exhausted his available state remedies. Next, Defendant asserts that Branch has failed to state a cause of action against Hefferman because he has not pled the subjective knowledge required to allege deliberate indifference nor set forth conduct or an omission of Hefferman that indicates he violated Plaintiff's constitutional rights and that any conduct set forth, even if proven, does not rise to the level of cruel and unusual punishment. Lastly, Hefferman contends that Branch has failed to state a claim concerning the reduction in caloric intake because Plaintiff has not sufficiently alleged facts that show he suffered a serious medical need. Because Plaintiff has failed to state a viable claim as to Hefferman, the motion to dismiss will be granted. Furthermore, based on the record before the court, it appears that Plaintiff has also failed to exhaust this claim.

## II. Discussion

### A. Standard of Review

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the Plaintiff's allegations. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *White v. Napoleon*, 897 F.2d 103, 106 (3d Cir. 1990). A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only if the Plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *ALA, Inc. v. CCAIR, Inc.* 29 F.3d 855, 859 (3d Cir. 1994). The reviewing court must consider only those facts alleged in the complaint and accept all of the allegations as true. *Id.*

In *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." "The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990); *Independent Enters., Inc. v.*

4

*Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1168 (3d Cir. 1997). This court will now discuss Defendant's motion in light of the standards set forth above and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### B. Deliberate Indifference

The fundamental principles of Eighth Amendment analysis reveal that "only 'the unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by [that Amendment]."[2] *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (citations omitted). *Accord Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere negligence or dissatisfaction with medical care does not state a constitutional claim. *Estelle v. Gamble*, 429 U.S. 97, 105-6 (1976). An Eighth Amendment claim exists only when there is a deliberate indifference to a *serious* medical need. *Id.*; *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978).

To establish deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson v. Seiter*, 501 U.S. 294, 299(1991). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

---

2. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

5

"The question . . . is whether prison officials, acting with deliberate indifference,

exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future

health.' " *Id.*, at 843.

Thus, under *Farmer, supra* 511 U.S. at 837, Branch must plead that

Hefferman knew that his conduct presented a substantial risk of harm to Branch.  A

review of the record before this court establishes that Plaintiff has failed to meet this

burden.  In his complaint, Branch asserts:

> While in the RHU my special diet meals were
> tampered with–drink lids opened or loose, bread had
> a heal [sic] imprint on it.  Also, the caloric count for
> my meal was reduced from 2500 to 2000 calories,
> allegedly at the order of Physician's Assistant
> Hefferman, who denied authorizing the change.
> Because I am diabetic I must maintain a strict diet.

(Doc. 22, A-2.)  The exhibits submitted by Plaintiff suggest that, at best, an error

occurred on the form indicating the amount of calories authorized for Plaintiff and the

error was immediately corrected when brought to the attention of the medical staff.

Accordingly, Plaintiff has failed to allege that Defendant possessed the required

subjective knowledge under *Farmer*.  Plaintiff also fails to allege that a substantial

risk of harm actually existed.

Furthermore, where an inmate is provided with medical care and the dispute

is over the adequacy of that care, an Eighth Amendment claim does not exist.

*Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D.Pa. 1988). Disagreement among individuals as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth County Correctional Inst. Inmates v. Lensario*, 834 F.2d 326, 346 (3d Cir. 1987).

There is insufficient proof in the record for a fair-minded jury to conclude that Defendant Hefferman was deliberately indifferent to Branch's medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Indeed, the scope and quality of medical attention that the Defendants, including Hefferman, provided Plaintiff precludes a finding of deliberate indifference. Accordingly, Plaintiff has failed to state a claim against Defendant Hefferman.

### C. Exhaustion

The PLRA provides that "no action shall be brought with respect to prior conditions under section 1983 . . . , by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). In *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000), the Third Circuit held that this provision is mandatory whether or not the administrative remedies afford the inmate-plaintiff the relief sought in the federal court action. The United States Supreme Court, in *Booth v. Churner*, 121 S.Ct. 1819 (2001), held that the PLRA "requires administrative exhaustion even where grievance process does not permit

7

award of money damages and prisoner seeks only money damages, as long as grievance tribunal has authority to take some responsive action." *See also Irwin v. Hawk*, 40 F.3d 347, 348 (11th Cir. 1994) ("When Congress prescribes an administrative remedy, application of the exhaustion requirement is not a matter of judicial discretion."). Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law.

Hefferman asserts that Plaintiff did not exhaust all three tiers of the administrative processes for each of his grievances.[3]  Hefferman relies upon Plaintiff's own exhibits to demonstrate that Branch has not completely exhausted his claims prior to filing the instant complaint.[4]

---

3.   The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance Review System. DC-ADM 804 (effective October 20, 1994). With certain exceptions not applicable here, DC-ADM 804 provides for an administrative review of institutional grievances. A grievance is a complaint submitted by an inmate related to a problem encountered during the course of confinement. DC-ADM 804 provides that an inmate may submit a written grievance to the prison's Grievance Coordinator. An appeal from the decision of the Grievance Coordinator may be made in writing to the prison superintendent, and a final written appeal may be presented to the Chief Hearing Examiner for the Department of Corrections. DC-ADM 804 has since been amended effective January 1, 2001. As of January 1, 2001, all inmates under the jurisdiction of the Department who have been personally affected by a Department or institution action or policy are permitted to file a grievance, to file an appeal to the facility manager from the initial grievance review, and to file a final appeal of the grievance decision to the Secretary's Office of Inmate Grievances and Appeals.

4.   If Defendant had attached documents outside of the pleadings to his motion to dismiss, the court would have treated the motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *see also Camp v. Brennan*, 219 F.3d 279, 280 (3d Cir.

Based on Plaintiff's own pleadings and record of exhaustion, Branch has

failed to allege that he has exhausted all available state administrative remedies on his

claim as to Hefferman. The only exhibits regarding the caloric intake reduction claim

consisted of inmate's requests to staff member. Based on those exhibits, it appears

that Plaintiff's concerns were addressed at the informal stage. Even if Plaintiff had

stated a viable claim, it would have been dismissed since Plaintiff did not complete

the grievance process.

---

2000). The purpose of this conversion is to provide the non-moving party to attach
its own affidavits or other materials in opposition to the motion before it is converted.
That is not the scenario before this court. The moving party did not attach materials
outside the pleadings but instead pointed towards Plaintiff's inconsistencies within
his own pleadings and exhibits to show that Plaintiff has not properly alleged full
exhaustion of his claim as to Hefferman. Accordingly, it is not necessary to construe
the motion to dismiss as a motion for summary judgment.

### III. Conclusion[5]

Defendant's motion to dismiss will be granted because Plaintiff failed to state

a viable claim as to Defendant Hefferman.  For clerical purposes, the Clerk of Court

will be directed to provide Defendant with a copy of Plaintiff's "mandamus" (Doc.

31), which was construed as part of his opposing brief.  Because the court is ruling in

---

5.    In his amended complaint, Plaintiff stated he wanted a change of venue as part
of his relief because he did not think this court could be fair.  Although it is an
improper motion for recusal, the court will nonetheless address Plaintiff's concern.
Under 28 U.S.C. § 455(a), a judge should recuse himself "in any proceeding in which
his impartiality might reasonably be questioned."  Further,
§ 455(b) provides examples of specific circumstances under which disqualification is
necessary.
    It is well-settled that recusal is only appropriate when it appears a judge has
"bias generated from a source outside the context of the judicial proceeding." *United
States v. Veteto*, 701 F.2d 136, 140 (11th Cir.), *cert. denied*, 464 U.S. 839 (1983).  In
deciding a motion for recusal, the court must apply an objective standard. *Edelstein
v. Wilentz*, 812 F.2d 128, 131 (3d Cir. 1987).  The proper inquiry is not whether the
moving party subjectively believes the judge has some preconceived bias or
prejudice, but rather whether a reasonable person, knowing all of the facts and
circumstances
". . . would harbor doubts concerning the judge's impartiality." *Blanche Rd. Corp. v.
Bensalem Township*, 57 F.3d 253, 266 (3d Cir. 1995) (citing *U.S. v. Dalfonso*, 707
F.2d 757, 760 (3d Cir. 1983)); *see also In re Antar*, 71 F.3d 97, 101 (3d Cir. 1995).
In determining whether an appearance of impropriety arises from my involvement in
the case, the proper inquiry is "whether a reasonable person, knowing all the
acknowledged circumstances, might question [my] continued impartiality."
*Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 164 (3d Cir. 1993)(citation
omitted).  Based on the facts set forth above, no reasonable person, with knowledge
of all the circumstances would have cause to question my impartiality.  Therefore,
recusal is unnecessary.

10

favor of Defendant, it is unnecessary to grant an enlargement of time for Defendant to

respond to the document.  An appropriate order is attached.


SYLVIA RAMBO
United States District Judge

Dated:  November  6  , 2001.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM R. BRANCH,                    :
              Plaintiff               :        CIVIL NO. 1:CV-00-1728
                                      :
        v.                            :        (Judge Rambo)
                                      :                    **FILED**
MR. RUSSIAN, *et. al.*,               :                 HARRISBURG, PA
              Defendants              :                  NOV 06 2001

                        <u>O R D E R</u>          MARY E. D'ANDREA, CLERK
                                                  Per _____
                                                          Deputy Clerk

        For the reasons set forth in the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

        1.  Defendant's motion to dismiss (Doc. 28) is **granted**.  Defendant

Hefferman is dismissed from this action.

        2.  For clerical purposes, this court has previously granted Defendants'

motion for enlargement, (Doc. 36), by court order (Doc. 39).

        3.  The Clerk of Court is directed to send a copy of Plaintiff's "mandamus"

(Doc. 31) to Defendant Hefferman.  Defendant's request for an enlargement of time

to respond to the document, if necessary, is denied since it is not necessary for

Defendant to respond.

4. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.


SYLVIA RAMBO
United States District Judge

Dated:   November      , 2001.