IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

William Branch                  :
      Plaintiff           :
                          :      No. 1:CV 00-1728
      v.                   :
                          :
CO Russian, et al.              :      (Judge Conner)
      Defendants          :
                          :


**DEFENDANTS' DOCUMENTS IN OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

### Index

Declaration of Milton Friedman                          **Appendix 1**

Declaration of Joseph Gowat                              **Appendix 2**

                                    GERALD J. PAPPERT
                                    **Attorney General**

                      **By:**        **GWENDOLYN T. MOSLEY**
                                    **Senior Deputy Attorney General**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**(717) 787-1180**

**Date: March 1, 2004**

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **William Branch** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:CV 00-1728** |
| **v.** | : | |
| | : | |
| **CO Russian, et al.** | : | **(Judge Conner)** |
| **Defendants** | : | |

## DECLARATION OF MILTON FRIEDMAN

I, Milton Friedman, do hereby state under penalty of perjury that the following is true and correct and based upon my personal knowledge:

1.  I am and was for all times relevant to this lawsuit employed by the Department of Corrections at the State Correctional Institution at Waymart ("SCI-Waymart") as Unit Manager.

2.  William Branch is housed on a block under my supervision. On February 2, 2004, Branch submitted a form *DC*-804, Official Inmate Grievance, addressed to Superintendent Colleran.

3.  Branch's grievance was given the number 74377 and assigned by the SCI-Waymart Grievance Coordinator to me for investigation. A true and correct copy of Grievance Number 74377 is attached as Exhibit 1.

4.  In grievance number 74377, Branch stated that he had asked Officer Gowat for permission to take a shower on Saturday morning before 8:30

**Appendix 1**

a.m. because of his religious belief and the officer refused his request. The grievance also stated that Captain Griffith had directed Branch to contact Major Gavin, that Branch had done so and that he had not received a response from Gavin as of February 2, 2004.

4.  Upon reading Branch's grievance, I realized what had occurred. The times for showering on Branch's block had recently been changed. Before the change, prisoner on Branch's block were not allowed to shower before 8:30 a.m. With the change in policy, prisoners could begin showering one-half hour earlier than was previously permitted. However, through inadvertence, the new shower times, though effective, had not yet been posted on the block.

5.  I responded in writing to Grievance Number 74377 on February 3, 2004 stating that those on Branch's block could now shower during three separate time periods each day: 0800 to 1100; 1230 to 1600; and 1800 to 2100. A true and correct copy of my February 3, 2004 written response to Grievance Number 74377 is attached as Exhibit 2.

6.  My response advised that the shower times could be limited because of maintenance or cleaning. Branch was also advised to contact Reverend Gagas for information if he wanted an exemption from the shower times for religious reasons.

7.    The next day, February 4, 2004, Branch submitted another grievance addressed to Superintendent in which he again wrote about Officer Gowat.

8.    Branch's February 4, 2004, grievance was given the number 74742 and was also assigned to me for investigation.   A true and correct copy of Branch's February 4, 2004 Grievance Number is attached as Exhibit 3.

9.    In  Grievance Number 74742, Branch stated that Officer Gowat had not allowed him to shower or told him that showers could begin at 8:00 a.m.  He complained that the new shower times had not been posted on the block.

10.    Branch also complained that Officer Gowat had ordered him to get his head and beard cut to punish him for attempting to shower before going to church and for "seeking redress from the government."

11.    The  only thing said about Griffith in this grievance  is that "[Branch] spoke to Capt. Griffith about c/o [sic] Gowat and ...explained that [Gowat] will not stop coming at [him]."

12.    The only reference to me in this grievance is the statement "Mr. [F]riedman failed to explain this to c/o [sic] Gowat ...   Mr. [F]riedman only told him I had no exemption."

13.    I responded in writing to  Grievance number 74742 on February 9, 2004 stating, *inter alia*, that because his request had not been granted,  he was not exempt from the grooming requirements.  A true and correct copy of my

RX TIME   03/01 '04 13:59                                        LOCATION:

February 9, 2004 Response is attached as Exhibit 4.

14.  My response also stated that Gowat's direction to him to get a haircut was in accordance with departmental policy and that Gowat would not delay enforcement of that policy until the court had resolved his claim of exemption. Branch complied with Officer Gowat's order to get a haircut.

15.  I responded as I did to Branch's grievances because I saw no evidence that he had been subjected to retaliation by Officer Gowat or anyone else.

16.  I did not retaliate against Branch.

Date: 2/27/04

MILTON FRIEDMAN



**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

**GRIEVANCE NO.** 74377

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Supt. Colleran | SCi Waymart | 2-2-04 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| William R. Branch CF3756 | William Branch CF3756 |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| Garment Plant | M-2 |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Sir: I ask C/o Gowatt if I could take a Show Early on Sat. morning before 8:30 AM. The Reason for the Show was a Religious Belief. Exdus 29:4 + 30:18-2 The washing and cleaning of christ church is still ongoing and the need for a visible sign of what God desire's for his church is needed "a Radiant church without stains and wrinkles or blemishes, but Holy and Blameless as a Sigh Jesus wash the Disciples feet. to this end I show our need to have Jesus wash our Daily Defilements away inorder to have a part of Jesus!

C/o Gowatt Refused me to shower, Capt. Griffith stated to contact The major Gavin which I did via Request, I had no answer to date I Respectfully ask for you help in this matter

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Grievance Coordinator

2/2/04
Date

Exhibit 1

LOCATION:                    RX TIME    02/25 '04 11:56

*DC-ADM 804, Inmate Grievance System*                                           **Attachment B**

DC-804
Part 2

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA   17011**

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO.

| | 74377 |
|---|---|

| TO:  (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| **BRANCH, William R.   CF3756** | SCI-WAYMART | **M2** | **02/02/2004** |

*The following is a summary of my findings regarding your grievance:*

You may shower on your block from: 0800 to 1100, 1230 to 1600, and 1800 to 2100 daily.  There may be times when showering may be further limited due to maintenance or cleaning.  If you need an exemption to this schedule because of religious reasons, contact Rev. Gagas who will explain to you the procedure for obtaining a religious exemption.

cc:   Superintendent Colleran
      Lt. Freethy
      Officer Gowat
      Rev. Gagas
      File

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| **Milton Friedman, U.M.** | *Milton F——* | 2/3/04 |
| LOCATION: | RX TIME   02/25 '04 11:56 | |

**Exhibit 2**

RX TIME 02/25 '04 11:56

**DC-804**
PART 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

74742

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Mr Colleran Supt | SCI Waymart | 2-4-04 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Wm Branch CF3756 | William Branch CF3756 | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| Garment Plant | M-2 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Sir: I wrote a Grievance on C/o Gowat who would not allow me to shower nor did he tell me that showers start at 8:00 AM nor is it Posted on the Block. This officer came in today and ordered me to get a hair cut/Trim my Beard. This Being done in Retaliation for me trying to get a shower before I go to church and for for Seeking Redress from from the Govern ment I spoke to capt. Griffith about C/o Gowat and I explained that he will not stop coming at me. as you know I am in court on this same issue. Mr Friedman failed to explain this to C/o Gowat Mr Friedman only told him I had no Exemption. any action Taken by the D.o.C Staff while a action is pending may be grounds for a Judgement in my favor as I the Protection of the

B. Actions taken and staff you have contacted before submitting this grievance.
Have
Courts on this Hair Exemption, We know that there are alternative means that meet the Legitimate Penological needs citing:
Benjamin Vs. Coughlin 905 F2d 571 at 577 (2ciR) 1990. cert. denied 498 US 951) (1990) The Law of the Land Respectfully I ask that you speak with

Your grievance has been received and will be processed in accordance with DC-ADM 804.
your Staff and have them reframe from all forms of Retaliation

2/5/04

Signature of Grievance Coordinator                                    Date

Exhibit 3

Feb 25 '04   12:50    P.06

*DC-ADM 804, Inmate Grievance System*                                                                *Attachment B*

DC-804
Part 2

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA   17011

| | GRIEVANCE NO. | 74742 |
|---|---|---|

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| **BRANCH, William   CF3756** | SCI-WAYMART | **M-2** | **02/04/2004** |

*The following is a summary of my findings regarding your grievance:*

You do not have a haircut exemption and your hair appears longer than what is permitted.  In our conversation of 2/06/04, you stated that you applied for a haircut exemption but it was denied.  Mr. Gowat directed you to get a haircut in order to comply with Department of Correction's policy.  He will not delay enforcing this policy until a court addresses your issues.  In addition, in our conversation of 2/09/04 you claim you can have an additional fifteen (15) days to go without a haircut so you can make an additional attempt to get an exemption.  You claim this because of change in policy.  Since your request has already been reviewed and denied and you had time to petition the court, I see no reason to delay ordering you to go to the Barber Shop.

Finally, a memo containing the shower hours are posted on the inmate bulletin board next to the dayroom.

cc:    Superintendent Colleran
        Lt. Freethy
        Officer Gowat
        File

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| **Milton Friedman, U.M.** | *Milton Friedman* | 2/9/04 |
| LOCATION: | RX TIME   02/25 '04 11:56 | |

Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **William Branch** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:CV 00-1728** |
| **v.** | : | |
| | : | |
| **CO Russian, et al.** | : | **(Judge Conner)** |
| **Defendants** | : | |
| | : | |

## DECLARATION OF JOSEPH GOWAT

I, Joseph Gowat, do hereby state under penalty of perjury that the following is true and correct and based upon my personal knowledge:

1.  I am and was for all times relevant to this lawsuit employed by the Department of Corrections at the State Correctional Institution at Waymart ("SCI-Waymart") as a Corrections Officer.

2.  William Branch is housed on the block where I work.

3.  During the first part of February of 2004, Branch told me that he needed to shower.

4.  At the time that Branch made this statement it was morning and the showers were being worked on, so I told Branch that he would have to wait.

5.  Branch then stated that he wanted to shower so that he could go to church.

6.  I responded to Branch that he could shower when the man working on the shower was done.

**Appendix 2**

7.  When the work on the shower was completed, Branch was allowed to shower.

8.  On another occasion later on in February of 2004, while observing Branch as he washed his beard, I noticed that his beard was longer than three inches in length. I also observed that the braids in his hair were unkempt.

9.  Because he was not in compliance with the department's grooming directive and he was not exempt from the directive, I ordered Branch to get his hair and beard cut. Branch complied with my order.

10. Prisoner grooming is governed by Department of Corrections Administrative Directive ("DC-ADM") 807. A true and correct copy of DC-ADM 807 is attached here as Exhibit 1.

11. DC-ADM 807 states, in pertinent part, that "hair which does not fall below the top of the collar shall be permitted". The directive allows for Afro styles which are no longer than four inches.

12. DC-ADM 807 also states that "[a] beard or goatee no longer than three inches; a mustache and sideburns shall be permitted provided they are kept neat and clean."

13. I had no knowledge of Branch's lawsuit when I responded to his request for a shower and when I ordered him to get his hair and beard cut. However, my actions would have been the same had I known of his lawsuit.

RX TIME    03/01 '04 13:59                                    LOCATION:

14.  No one ordered me to respond to Branch as I did.

14.  I have treated Branch the same as I treat all other prisoners.

15.  I have never retaliated against Branch for any reason and I have no

knowledge that anyone else did so.

Date: **3 - 1 - 0 4**

JOSEPH GOWAT



**POLICY STATEMENT**
**Commonwealth of Pennsylvania • Department of Corrections**

| Policy Subject: | Policy Number: |
|---|---|
| **Inmate Grooming and Barber/Cosmetology Programs** | **DC-ADM 807** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **December 15, 2003** | *JerBeard* <br> **Jeffrey A. Beard, Ph.D.** | **January 15, 2004** |

## I. AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§ 61, 66, and 186 and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

The purpose of this document is to establish policy and procedures for inmate personal grooming of hair and to establish a Barber School, Barber Manager, Cosmetology, Cosmetology Manager vocational program for eligible inmates.

## III. APPLICABILITY

This policy is applicable to all inmates in all Department of Corrections facilities with the exception of Community Corrections Centers.

## IV. DEFINITIONS

### A. Department

The Pennsylvania Department of Corrections.

### B. Hairpieces

Artificial hair including wigs, toupees, hair weaves, or other artificial hair devices.

Exhibit 1

## V.  POLICY

It is the policy of the Department to allow inmates personal freedom in their appearance as long as it does not conflict with the facility's procedures for safety, security, identification, sanitation efforts, and to provide vocational programming in the barber/cosmetology fields.[1]

## VI.  PROCEDURES

### A. Hairstyles

1. **General**

   Hairstyles of different types will be permitted provided they do not conflict with the facility's procedures for safety, security, identification, and sanitation efforts.

2. **Male Hairstyles**

   a. Hair that does not fall below the top of the collar in length  (Afro styles no longer than four inches) shall be permitted.

   b. A beard or goatee no longer than three inches; a mustache and sideburns shall be permitted provided they are kept neat and clean.

   c. Specialty haircuts such as Mohawks, razor/clipper cut designs, etc., and dyeing, coloring, or tinting of hair are prohibited.

   d. An inmate request for a hairstyle exemption based on religion shall be in accordance with Department policy **DC-ADM 819, "Religious Activities."**

3. **Female Hairstyles**

   Dyeing, coloring, or tinting of hair is permitted only as provided by the certified training program for cosmetology in the facility beauty school.

### B. Grooming Services

1. Inmates are not permitted to cut or groom the hair or beard of another inmate except as part of the facility barber, cosmetology, or barbershop programs.[2]

2. Hair, beards, and mustaches shall be trimmed to maintain hygiene and safety standards and to meet requirements of working with all mechanical equipment. The length or style of hair shall not interfere with the effectiveness of safety devices.  Inmates shall be required to wear a protective or safety device such as a hardhat, hairnet, hair covering, and face or respiratory protection on assignments where such items are appropriate.

---

[1] 4-4283
[2] 4-4343

3. At facilities having certified barber/cosmetology programs, there may be occasions where special grooming procedures require the use of "models." In such instances, the instructor shall request authorization from the Facility Manager for such procedures to be performed on inmate volunteers. The Facility Manager shall make a determination and advise the instructor of the decision.

4. Hairpieces shall be permitted when it is necessary to present a normal appearance due to, accident, injury, or disease as certified by the facility physician.

## C. Security

1. Inmates who refuse to comply with the provisions of this directive are subject to disciplinary action in accordance with Department policy **DC-ADM 801, "Inmate Discipline."**

2. All hairstyles must be able to be searched by facility staff utilizing facility security equipment or pat searches.

3. Any grooming activity that changes the appearance of the inmate must be reported to the Records Office for immediate review and possible issue of a new identification photo.

## D. Barber/Cosmetology Vocational Programs

The Barber/Cosmetology Instruction Program is a vocational training opportunity extended to selected inmates on a discretionary basis by the Department.

### 1. Enrollment Guidelines

a. Enrollment in the Barber/Cosmetology Instruction Program is neither a right nor an earned privilege. Inmates are not entitled to participate by virtue of technical compliance with program guidelines. Factors to be considered are; published guidelines, public safety, security, efficient operation, and availability of facility resources.

b. First consideration will be given to inmates having a high school diploma or GED. However, if more participants are needed, this requirement may be satisfied by using a standardized test to establish at least a 10th grade-reading level as determined by the Tests of Adult Basic Education (TABE). The facility's education department shall conduct testing.

### 2. Criteria for Participation

a. The inmate must have 12 to 36 months to serve until the expiration of his/her minimum sentence.

b. Inmates serving life sentences are ineligible.

c. Inmates returned for parole violation or serving a new conviction who obtained a barbers license during a prior state incarceration may not be re-enrolled into the barber school.

d. Each inmate must fill out an application for enrollment in the Barber/Cosmetology Program (**Attachment A**) or Barber/Cosmetology Manager Program (**Attachment B**).

e. All license and examination fees must be paid by the inmate.

f. Each inmate must attend practical and theory classes that will require study in the evening and on weekends.

g. A one-hour theory class is to be held each day. The inmate must maintain a 70% average to remain in the program.

h. A six to eight week probationary period is given to each inmate. The inmate must show acceptable progress. If progress in the various areas is not acceptable, the inmate can be removed from the program.

i. The inmate must have a satisfactory facility record that includes:

   (1)   no incidents of an aggressive or assaultive nature;

   (2)   a positive housing unit report; and

   (3)   no Class I misconducts for the previous six months.

j. Inmates who receive Class I misconducts may removed from the program or waiting list.

k. The inmate must verify completion of a high school diploma or GED by obtaining a statement of Educational Verification from the facility's education department.

l. The inmate must be free from contagious disease and infection as certified by the facility's medical department.

m. Since enrollment is neither a right nor an earned privilege, each inmate shall be considered on an individual basis by designated staff. The Department has determined that inmates serving life sentences or having sexual offense convictions may not be enrolled in the barber or cosmetology program.



**E. Barber Manager Program**

   1. All inmates who are accepted into the Barber Manager Program must be current Pennsylvania-registered barbers.

2. A registered inmate barber expressing interest in a transfer to a facility with the Barber Manager Program must fill out an application (**Attachment B**) and inform the Barber Instructor of his interest. It is the Barber Instructor's responsibility to notify the Corrections Barber Program Coordinator, in writing, of the inmate's interest and inquire which facility may have openings in the program.

3. If the inmate meets the program requirements, a transfer petition will be initiated by the Corrections Barber Program Coordinator via memorandum to the Facility Manager, Deputy Superintendent for Centralized Services, and the inmate's counselor for initial approval. The Bureau of Inmate Services Transfer Committee at Central Office will grant final approval.

4. The selection process will be administered by the facility staff review team pertinent to the program.

5. The criteria for participation listed in **Section VI. D. 2** shall also apply to the Barber Manager Program.

**F. Cosmetology Manager Program**

1. Only female inmates may participate in the Cosmetology Manager Program. All inmates accepted into the Cosmetology Manager Program must be current Pennsylvania-registered cosmetologists.

2. Registered inmate cosmetologists interested in the Cosmetology Manager Program must fill out an application (**Attachment B**) and inform the Cosmetology Instructor of her interest. It is the Cosmetology Instructor's responsibility to notify the Corrections Barber Program Coordinator, in writing, of the inmate's interest and inquire of openings in the program.

3. If the inmate meets the program requirements, the Cosmetology Instructor shall forward a letter of recommendation to the Facility Manager, Deputy Superintendent for Centralized Services, the inmate's Counselor, and the School Principal;

4. The selection process will be administered by the facility staff review team pertinent to the program.

5. All other directives relative to enrollment and termination in the Barber Instruction Program shall apply to the Cosmetology Manager Program.

**G. Termination**

1. Termination from enrollment may occur whenever the inmate student fails to meet the following requirements under the following circumstances:

   a. attendance at theory and practical classes shall be mandatory. Excuses from class will be in accordance with established facility procedures. Poor attendance or unexcused absences are sufficient reasons for terminating enrollment;

b. each inmate must demonstrate acceptable progress in all areas of the barber school curriculum. The inmate student must maintain a 70% minimum average in barber theory class work and adhere to performance standards established by the program while engaged in barber practice work. Substandard theory or substandard performance are sufficient reasons for terminating enrollment;

c. no inmate will be permitted to remain in the program after he/she has received a barber/cosmetology license; and

d. an inmate barber/cosmetology student whose medical clearance is revoked will be terminated from enrollment. Any inmate barber/cosmetology student terminated under this sub-section may apply for re-enrollment in the manner prescribed for initial enrollment when he/she receives medical clearance.

e. All Class I misconducts may be considered sufficient grounds for terminating enrollment and the misconduct need not be work related. A misconduct which results in RHU status may be sufficient basis for terminating enrollment.

f. Termination from enrollment may be ordered by the Hearing Examiner as a sanction imposed in accordance with Department policy **DC-ADM 801, "Inmate Discipline."** Appeals can be sought only in the manner provided for in that policy.

## VII. SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary, or designee, may suspend any provision or section of this policy, for a specific period.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## IX. RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A. Release of Information

1. Policy

This policy document is public information and may be released upon request.

2. Procedure Manual (if applicable)

The procedure manual for this policy is not public information and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee. This manual or parts thereof, may be released to any Department of Corrections employee on an as needed basis.

## B. Distribution of Policy

### 1. General Distribution

The Department of Corrections' policy and procedure manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

### 2. Distribution to Staff

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

## X.  SUPERSEDED POLICY AND CROSS REFERENCE

### A. Superseded Policy

#### 1. Department Policy

a. DC-ADM 807, Inmate Hygiene and Grooming issued December 16, 1997 by former Secretary Martin F. Horn.

b. 7.6.2, Barber/Cosmetology issued February 10, 1997 by former Secretary Martin F. Horn.

c. 7.6.6, Barber/Cosmetology Advisory Committee issued March 18, 1994 by former Secretary Joseph D. Lehman.

#### 2. Facility Policy and Procedures

This document supersedes all facility policy and procedures on this subject.

### B. Cross Reference(s)

#### 1. Administrative Manuals

a. DC-ADM 801, Inmate Discipline
b. DC-ADM 819, Religious Activities
c. 1.1.1, Policy Management
d. 6.3.1, Facility Security

#### 2. ACA Standards

a. Administration of Correctional Agencies: 4-4283, 4-4343, 4-4517
b. Adult Correctional Institutions: None.
c. Adult Community Residential Services: None.
d. Adult Correctional Boot Camp Programs: None.

e.  Correctional Training Academies: None.

**3. Other**

Management Directive 230.10, Trainee and Subsistence Allowance

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **William Branch** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:CV 00-1728** |
| **v.** | : | |
| | : | |
| **CO Russian, et al.** | : | **(Judge Conner)** |
| **Defendants** | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, **GWENDOLYN T. MOSLEY,** Senior Deputy Attorney General

for the Commonwealth of Pennsylvania, Office of Attorney General, hereby

certify that on **March 1, 2004,** I caused to be served a true and correct copy of the

foregoing **Defendants' Documents in Opposition to Plaintiff's Motion for a**

**Preliminary Injunction** by depositing it in the United States mail, first-class

postage prepaid to the following:

William Branch, #CF-3756
SCI-Waymart
P.O. Box 256
Waymart, PA  18472


                                               **/s/ GWENDOLYN T. MOSLEY**
                                               **GWENDOLYN T. MOSLEY**
                                               **Senior Deputy Attorney General**