## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM BRANCH        :
       :
        Plaintiff     :    No. 1:00-CV-1728
       :
        v.      :    (Judge Conner)
       :
RUSSIAN, et al.,        :
       :
        Defendants    :    ELECTRONICALLY FILED

**DEFENDANTS' REPLY BRIEF**

Respectfully submitted,

**GERALD PAPPERT**
**Attorney General**

By:    s/GWENDOLYN T. MOSLEY
       **GWENDOLYN T. MOSLEY**
       **Senior Deputy Attorney General**
       **Attorney I.D. No. 29157**

**Office of Attorney General**        **SUSAN J. FORNEY**
**15th Floor, Strawberry Square**      **Chief Deputy Attorney General**
**Litigation Section**        **Chief, Litigation Section**
**Harrisburg, PA 17120**
**(717) 787-1179**        **Counsel for Defendants**

**Dated: June 11, 2004**

# <u>TABLE OF CONTENTS</u>

<u>**Page(s)**</u>

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE CASE ............................................................. 1

ARGUMENT ...................................................................................... 3

I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      BRANCH'S CLAIM OF UNLAWFUL REMOVAL FROM
      EMPLOYMENT BECAUSE IT IS BARRED BY THE STATUTE OF
      LIMITATIONS .......................................................................... 3

II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      BRANCH'S RETALIATION CLAIMS BECAUSE THE FACTS
      SHOW THAT THE ACTIONS COMPLAINED OF WOULD HAVE
      BEEN TAKENABSENT HIS PROTECTED ACTIVITES .................... 4

III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      BRANCH'S DENIAL OF COURT ACCESS CLAIM BECAUSE
      THERE ARE NO FACTS SHOWING A DEPRIVATION OR AN
      ACTUAL INJURY ...................................................................... 6

IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      BRANCH'S EIGHTH AMENDMENT CLAIMS BECAUSE THERE
      IS NO EVIDENCE OF A SERIOUS MEDICAL NEED OR
      DELIBERATE INDIFFERENCE ON THE PART OF PRISON
      OFFICIALSTO THAT NEED........................................................ 7

V.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      BRANCH'S EX POST FACTO CLAIM BECAUSE THAT CLAIM
      WAS NOT INCLUDED IN THE COMPLAINT ................................ 10

VI.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      BRANCH'S CONSPIRACY CLAIM BECAUSE THERE IS NO
      EVIDENCE ESTABLISHING ANY OF ITS ELEMENTS.................. 11

VII.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      BRANCH'S EDUCATION CLAIM BECAUSE THERE IS NO
      EVIDENCE THAT HE WAS TREATED DIFFERENTLY THAN
      SIMILARLY SITUATED PRISONERS ................................................. 12

VIII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      BRANCH'S HAIR-CUT EXEMPTION CLAIM BECAUSE THE
      POLICY IS CONTITUTIONAL AND THERE IS NO EVIDENCE
      THAT IT WAS APPLIED DIFFERENTLY TO HIM .......................... 14

IX.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      BRANCH'S RACIAL PROFILING CLAIM BECAUSE THE
      CLAIM WAS NOT INCLUDED IN HIS COMPLAINT ...................... 16

CONCLUSION ................................................................................. 17

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Case Name**                                                                             **Page(s)**

*Ammlung v. City of Chester*, 494 F.2d 811 (3d Cir. 1974) ......................... 12

*Atkinson v. Taylor*, 316 F.3d 257 (3d. Cir. 2003) ......................................... 9

*Bell v. Wolfish*,  441 U.S. 520 (1979) .......................................................... 14

*Cito v. Bridewater Twp. Police Department*,
    892 F.2d 23 (3d Cir. 1989) ...................................................................... 3

*Estelle v. Gamble*, 429 U.S. 97 (1976) ..................................................... 8, 9

*Helling v. McKinney*, 509 U.S. 25 (1994) .................................................... 9

*Jones v. North Carolina Prisoners' Labor Union*,
    433 U.S. 119 (1977) ............................................................................... 14

*Mickens-Thomas v. Vaughn*,
    321 F.3d 374 (3d Cir. 2003) ................................................................... 10

*O'Lone v. Shabazz*, 482 U.S. 341 (1987) .................................................... 14

*Pell v. Procunier*, 417 U.S. 817 (1974) ...................................................... 15

*Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) .............................................. 6

*Rhodes v. Chapman*, 452 U.S. 337 (1981) .................................................... 8

*Robins v. Horn, et al.*, No. 99-1841
    (M.D.Pa. Sept. 30, 2001) ....................................................................... 15

*Safeguard Mutual Insurance Co. v. Miller*,
    477 F. Supp. 299 (E.D.Pa. 1979) ........................................................... 11

*Shabazz v. Cole*, 49 F. Supp. 2d 117 (D. Mass. 1999) ................................. 4

## STATUTES

42 U.S.C. §1983 ............................................................................................ 11

## UNITED STATES CONSTITUTION

First Amendment..................................................................................14, 15

Eighth Amendment .............................................................................7, 8, 10

U.S. CONST. art. I,§10, cl.1 (*Ex Post Facto* Clause) ........................*passim*

## RULES AND PROCEDURES

Federal Rules of Civil Procedure 56.............................................................7

## Statement of the Case

On December 31, 2003, a motion for summary judgment, statement of undisputed material facts, supporting brief and supporting documents were filed on behalf of defendants Martin Horn, Raymond Colleran, Kim Griffiths, Wayne Gavin, Timothy Welling, William Gagas, Milton Friedman, Elaine Martin, Ronald Richards, Christopher Jones, Martin Walsh, Christina Wilbur, David Gorman, Joseph Scalzo, Neil Heffernan, Carol Surace, Edward Burke, Emanuel Patterson, Julie Suchy and Richard Russian with respect to all the claims in Branch's complaint.

Branch claimed that he was unable to respond to defendants' summary judgment motion because he had not received the discovery from the defendants. Therefore, the Court, by order dated February 19, 2004, enlarged to March 19, 2004 the discovery period to allow Branch the opportunity to conduct discovery for purposes of opposing the motion for summary judgment. However, in the discovery he directed to the defendants Branch did not request information that was relevant to the issues raised in defendants' summary judgment motion. Instead, he requested information concerning claims of racial discrimination and parole that had not been presented in this lawsuit, financial information concerning the defendants and information concerning grievances and charges unrelated to his grievances made by other prisoners against the defendants. Because Branch's

discovery requests were outside the scope of the Court's February 19, 2004 order, defendants did not provide the discovery he requested.

By order dated May 10, 2004, the Court, *inter alia,* directed Branch to file a supplemental brief in opposition to defendants' motion for summary judgment on or before May 31, 2004. On June 7, 2004, counsel for the defendants received Branch's brief in opposition to defendants' summary judgment motion. Although Branch's brief referred to exhibits, counsel's materials did not include any such materials. Counsel has now obtained the exhibits from the Court's electronic filing system and is in a position to respond to Branch's opposing brief.

In his opposing brief, Branch has not addressed all of the arguments raised in defendants' summary judgment motion. Branch argues in his brief that there are material facts in dispute concerning whether defendant Surace unlawfully terminated his employment; whether defendants Russian, Friedman and unidentified others retaliated against him; whether unidentified individuals denied him court access while he was in the RHU; whether he was impermissibly exposed to an inmate who smoked and assigned to a top bunk as opposed to a bottom bunk; whether he was the subject of a conspiracy by the defendants; whether defendant Wilbur denied him equal protection of the laws by removing him from an English class; whether the Department of Correction's hair-cut exemption policy was unlawfully applied to him; and whether he was the subject of racial profiling.

Defendants continue to rely upon the arguments presented in the brief in support of their summary judgment filed on December 31, 2003, which are incorporated by reference herein.  Defendants submit this reply brief and address each of Branch's arguments under separate headings below.

**ARGUMENT**

## I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRANCH'S CLAIM OF UNLAWFUL REMOVAL FROM EMPLOYMENT BECAUSE IT IS BARRED BY THE STATUTE OF LIMITATIONS.

Branch complained that defendant Carol Surace violated his federally protected rights by dismissing him from his job in the garment plant.  In support of the summary judgment motion on this claim, defendants submitted the declaration of defendant Surace which stated that Branch last worked in the garment plant in 1997 and was dismissed from that employment on October 15, 1997.  *See* Surace Declaration, ¶¶5, 8.[1]  Under *Cito v. Bridewater Twp. Police Department*, 892 F.2d 23, 25 (3d Cir. 1989), a two-year statute of limitations period governs claims brought pursuant to §1983.  Based upon *Cito*, Branch's time for obtaining relief for that incident expired on October 15, 1997, more than nine months before he filed

---

[1] The Surace Declaration is contained in Documents in Support of Defendants' Motion for Summary Judgment filed on December 31, 2003 as Appendix K.

3

this complaint, and so his claim against Surace is barred by the statute of limitations.[2]

In his opposing brief, Branch does not challenge the applicability of the two year statute of limitations. Nor does he challenge the accuracy of the dates given in Surace's declaration concerning the dates when he worked in the garment plant and was removed from that employment. Accordingly, defendant Surace's statute of limitations defense remains unrebutted. Absent evidence in the record which shows that Branch's claim against Surace survives the bar of the statute of limitations, defendants' motion for summary judgment on this claim should be granted.

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRANCH'S RETALIATION CLAIMS BECAUSE THE FACTS SHOW THAT THE ACTIONS COMPLAINED OF WOULD HAVE BEEN TAKEN ABSENT HIS PROTECTED ACTIVITIES.

Branch asserts that defendant Russian conducted searches of his cell area without good reason; that others who were not identified issued misconducts to him near the time that he was considered for parole to punish him for suing prison officials and reporting their misconduct; that defendants Gavin and Gagas forced him to get a haircut and denied his request for a haircut exemption to force him to

---

[2] Even if this claim were not barred by the statute of limitations, Branch would not be entitled to relief because prisoners have no constitutional right to any particular work assignment. *Shabazz v. Cole,* 69 F.Supp. 2d 117 (D.Mass. 1999).

drop his lawsuits; and that defendant Wilbur made him choose between attending her class and attending choir practice to force him to with draw his lawsuits. These charges, without more, do not rebut defendant's proof that they would have taken the same actions for reasons unrelated to his exercise of protected First Amendment activities.

Branch has not countered the facts presented in defendants' declarations that security inspections serve important prison safety and security interests. *See* Russian Declaration, ¶4; Ellett Declaration, ¶5.[3] The declaration of Lieutenant Ellett establishes that security inspections also serve the prison's interests in promoting the health of prisoners and prison employees. *See* Ellett Declaration, ¶5. Branch also has not rebutted defendants' evidence that issuing misconducts to prisoners who threaten staff and refuse to act in accordance with prison rules and with the orders of staff promotes discipline, internal order and security. Gavin Declaration, ¶8; Ellett Declaration, ¶¶8-9. Likewise denying requests from prisoners for haircut exemptions, and for "excused absences" from education classes who do not follow rules promotes discipline, internal order and security. *See* Gagas Declaration, ¶¶13-14; Walsh Declaration, ¶¶4-5, 9-10; Wilbur Declaration, ¶¶3-5; Surace Declaration, ¶¶5-7,9-10.

---

[3] The Ellett Declaration is contained in Supplemental Documents in Support of Defendants' Motion for Summary Judgment as Appendix L.

5

Branch has not presented facts which draw into question the propriety and sincerity of defendants' reasons for searches his cell, issuing misconducts, denying his requests for "excused" absences from class or denying his requests for a haircut exemption, thus even if he would prove causation, the undisputed evidence establishes that defendants would have taken the same legitimate actions even in the absence of the protected activity. *See Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001). For these reasons, defendants are entitled to summary judgment on Branch's retaliation claims.

III. **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRANCH'S DENIAL OF COURT ACCESS CLAIM BECAUSE THERE ARE NO FACTS SHOWING A DEPRIVATION OR AN ACTUAL INJURY.**

Branch's claim that he was denied access to his legal material while he was in the RHU by unidentified individuals is also unrebutted. In support of their motion for summary judgment, defendants presented the declaration of defendant Welling who had responsibility for the RHU which states that Welling did not deny Branch access to his legal papers while Branch was confined in the RHU or at any other time. *See* Declaration of Timothy Welling, ¶3.[4] The Welling declaration also states that Welling did not deny Branch request slips, envelopes,

---

[4] The Welling Declaration is contained in Documents in Support of Defendants' Motion for Summary Judgment filed on December 31, 2003 as Appendix E

6

papers or other materials he needed to file grievances or petition the courts during

his confinement in the RHU. *See id.*, at ¶5.

In opposing defendants' motion, Branch simply repeated the allegations in

his complaint and by so doing did no more than "rest upon the mere allegations or

denials" in his pleading which Rule 56 states a party cannot do. *See* Fed.R.Civ.P.

56(e)(When a motion for summary judgment is made and supported as provided in

this rule, an adverse party may not rest upon the mere allegations or denials of the

adverse party's pleading, but the adverse party's response, by affidavits or as

otherwise provided in this rule, must set forth specific facts showing that there is a

genuine issue for trial.)  Branch has not stated or demonstrated that his access to

materials which would permit him to identify either the defendants who deprived

him of his legal materials or the motion or appeal from his conviction which he

claims were adversely affected by the alleged denial is presently impaired.

Defendants are entitled to summary judgment on Branch's denial of court access

claim also.

**IV.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON BRANCH'S EIGHTH AMENDMENT CLAIMS BECAUSE
THERE IS NO EVIDENCE OF A SERIOUS MEDICAL NEED
OR DELIBERATE INDIFFERNCE ON THE PART OF PRISON
OFFICIALS TO THAT NEED.**

Branch seeks relief against the defendants for what he terms are Eighth

Amendment violations.  Specifically, Branch claimed that following his release

from the RHU he was assigned to a room on Block C-1 with a prisoner who "had a hole in his head" and was a smoker. Complaint, p.4. Branch claims that he does not smoke. He stated that he was moved from Block C-1 to Block D-1 which is also a block which allows smoking. He claims that after requests to be moved to a non-smoking block, he was moved to Block F-2 which is a non-smoking block.

Branch also complained that he was assigned to a bunk with a large, "verbally aggressive Muslim prisoner" who attacked him verbally, attacked his religion and threatened to physically attack him. Complaint, p. 5. He claims that defendant Martin granted his requests and moved him. Complaint, p. 5. Branch argues that there are material facts in dispute which preclude the grant of summary judgment in defendant's favor on this claim. Defendants disagree.

The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976) Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337. 347 (1981). As the Supreme Court has said, "the Constitution does not mandate comfortable prisons." *Id.* at 349.

Prisoners may bring Eighth Amendment suits alleging that their exposure in prison to second-hand smoke, known as environmental tobacco smoke ("ETS"),

constitutes "cruel and unusual punishment." *Helling v. McKinney*, 509 U.S. 25, 36 (1994) These ETS claims come in two varieties—present injury claims and future injury claims--and are measured by different standards. *Atkinson v. Taylor*, 316 F.3d 257 (3d. Cir. 2003). Branch did not specify the nature of his claims; however, because the complaint states that he was moved from the smoking block and from the room he shared with an inmate who smoked, defendants have construed his claims as ones seeking relief for present injuries only.

A present injury claim is governed by the principles established in *Estelle v. Gamble, supra.* A prisoner must allege a serious medical need, which is the objective component, and deliberate indifference by prison officials in response to that need, which is the subjective component. *Id.* To obtain relief, a prisoner must prove both components. *Helling*, 509 U.S. at 35.

Branch has not met his burden. He has presented no evidence which shows that he was exposed to ETS at the time that he filed his complaint or that he was suffering a serious medical condition at the time. Moreover, he has not shown that prison officials were deliberately indifferent to his concerns. In fact, the allegations in this complaint show that the contrary is true. In response to his complaints about the smoke to which he was exposed, Branch was moved from Block C-1 to Block D-1 and then to Block F-2. *See* Complaint, pp. 4-5.

There is also no evidence that his complaints about the top bunk went ignored. According to the declaration of defendant Karwowski, Branch was moved from a top bunk in Cube #1 to a top bunk in Cube #4 in response to his complaint about the hostile roommate who attacked him verbally and threatened him physically. *See* Karwowski Declaration, ¶¶ 5-6. Following that move, Branch was moved to a bottom bunk in Cube #4 and then to a bottom bunk in Cube #2 after his medical need for such a bunk was confirmed. Karwowski Declaration, ¶¶7-11.[5] Defendants should be granted summary judgment on Branch's Eighth Amendment claims based upon ETA and bunk assignments.

## V.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRANCH'S EX POST FACTO CLAIM BECAUSE THAT CLAIM WAS NOT INCLUDED IN THE COMPLAINT.

Branch introduced for the first time in his opposing brief the claim that defendant Friedman violated his constitutional rights by denying him parole in 1999 because he would not admit his guilt. Plaintiff's Brief, p.3. Citing the case *Mickens-Thomas*, 321 F.3d 374 (3d Cir. 2003), Branch seems to argue that the Third Circuit has said that requiring a prisoner to admit his guilt constitutes a violation of the *Ex Post Facto* clause of the United States Constitution. Branch is mistaken. First, the claim asserted in his opposing brief against Friedman is not

---

[5] The Karwowski Declaration is contained in Documents in Support of Defendants' Motion for Summary Judgment filed on December 31, 2003 as Appendix F.

included in his complaint. But even if it were, it would be time-barred. Also, requiring a prisoner to admit his guilt in order to be considered for parole does not violate the *Ex Post Facto* clause. Moreover, the Third Circuit did not consider whether requiring a prisoner to admit his guilt violates his federally protected rights in *Mickens-Thomas*. This newly-articulated claim cannot be the basis for denying defendants' summary judgment motion.

### VI. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRANCH'S CONSPIRACY CLAIM BECAUSE THERE IS NO EVIDENCE ESTABLISHING ANY OF ITS ELEMENTS.

Branch argues in his brief that "the staff" conspired to retaliate against him and to punish him by subjecting him to "planned series of disciplinary actions" while he was in the RHU and by turning up the fans and air-conditioning there . Plaintiff's Brief, p. 4. He also charged that defendant Wilbur and "the other defendants" are conspirators in connection with her removing him from her English class. Plaintiff's Brief, p. 6. These statements, even if true, do not state a claim for conspiracy under §1983.

A cause of action for conspiracy to violate one's civil rights can properly be maintained under §1983. *Safeguard Mutual Insurance Co. v. Miller,* 477 F. Supp. 299 (E.D.Pa. 1979) To proceed on a conspiracy cause of action, a plaintiff must first allege, with sufficient particularity, the existence of a conspiracy. *Id.* at 304. To prevail, there must be evidence of a combination, agreement or understanding

11

among all or between any of the defendants. *Ammlung v. City of Chester,* 494 F.2d

811, 814 (3d Cir. 1974). Plaintiff must prove that the defendants plotted, planned

or conspired together to carry out the chain of events. *Id.*

Branch's statements miss this mark. There are no facts in the complaint or

in his opposing brief which establish a conspiratorial relationship between any of

the named defendants. There are not even the most conclusory statements that

named defendants had an understanding or acted jointly. Based upon Branch's

submission, there is no basis for concluding that the defendants engaged in a

conspiracy to do anything and the documents he sought in discovery are not

reasonable calculated to lead to such information. Defendants are entitled to

summary judgment on Branch's conspiracy claim.

### VII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRANCH'S EDUCATION CLAIM BECAUSE THERE IS NO EVIDENCE THAT HE WAS TREATED DIFFERENTLY THAN SIMILARLY SITUATED PRISONERS.

Branch argues that there are material facts in dispute which prevent the grant

of summary judgment on his claim against defendant Wilbur. In his complaint,

Branch claimed that Wilbur denied him equal protection of the laws by requiring

him to choose between attending English class and choir practice which were both

held at the same time. Complaint, p. 6. He also claimed that defendant Wilbur had

singled him out because of his religious beliefs. *Id.* The evidence of record does

not bear him out.

Under educational policies at SCI-Waymart, a prisoner who is participating in a school program can request and be excused from attending class for certain religious events.   Walsh Declaration, ¶3[6].   However, choir practice is not considered a religious event and so "excused" absences from class were not available for choir practice.   *Id.,* ¶¶ 3-5.   Prisoners who were interested in participating in both activities had to choose between the two.   Prisoners enrolled in a school program are allowed three unexcused absences per semester.   *See* Walsh Declaration, ¶6.   They were removed from the program if they received a fourth. *See id.*

In opposing defendants' motion for summary judgment, Branch has presented no case which states that prisons must treat a prisoner's attendance at choir practice as part of a religious service deserving of constitutional protection. Nor he has presented no evidence that his requests to defendant Wilbur for "excused" absences from class were treated any differently from those of other prisoners or that his religious beliefs had any bearing on the manner in which defendant Wilbur treated his requests. Defendants are entitled to summary judgment on this claim.

---

[6] The Walsh Declaration is contained in Documents in Support of Defendants' Motion for Summary Judgment filed on December 31, 2003 as Appendix I.

13

## VIII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRANCH'S HAIR-CUT EXEMPTION CLAIM BECAUSE THE POLICY IS CONSTITUTIONAL AND THERE IS NO EVIDENCE THAT IT WAS APPLIED DIFFERENTLY TO HIM.

Branch seems to argue in his brief that he was denied equal protection of the laws in that he was denied the opportunity afforded other prisoners to get an exemption from the haircut directive before being required to have his hair cut. The facts of record do not support this claim.

It is settled that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). "Inmates clearly retain protections afforded by the First Amendment,... including the directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz,* 482 U.S. 341, 348 (1987). Constitutional rights, however, such as the right to practice religion may be reasonably restricted in order to facilitate the maintenance of proper discipline and order within prison. Valid penological objectives, such as deterrence of crime, rehabilitation of prisoners and institutional security justify limitation on the exercise of constitutional rights by prisoners. *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132 (1977), As such, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the

legitimate penological objectives of the correctional system." *Pell v. Procunier,*
417 U.S. 817, 822 (1974).

In *Robins v. Horn, et al.,* No. 99-1841 (M.D.Pa. Sept. 30, 2001) Judge
Vanaskie considered and upheld Department of Corrections Administrative
Directive ("DC-ADM") 807 against a constitutional challenge brought by a state
prisoner. In *Robins,* the prisoner claiming to be an adherent to a Native American
religion who refused to provide the documentation required for a religious
exemption was subject to multiple disciplinary charges for refusing to cut his hair.
The prisoner complained that the application of DC-ADM 807 to him violated his
right to freedom of religion under the First Amendment. Judge Vanaskie rejected
Robin's claims, concluding that the Department's safety, security and sanitation
concerns set forth as the justification for DC-ADM 807 were valid, penological
concerns; that there was no evidence that Robins was unable to exercise alternative
means of practicing his religion within the prison that the impact of
accommodating Robins would have on the guards, other prisoners and on the
allocation of prison resources would be immeasurable; and that an alternative to
the hair length requirement in the directive in the form of its religious exemption
policy which itself is rationally related to the prison's legitimate interests. Judge
Vanaskie held that a valid, rational connection exists between DC-ADM 807 and
the legitimate concerns put forward to justify it and so it is constitutional.

Defendants have offered the Declaration of defendant Gagas which states that Branch did in fact apply for a haircut exemption under DC-ADM 807 but his application was denied because he did not satisfy the requirement that he provide a letter or other certification from his outside faith group which verifies that he was known by the head of his religious faith while on the street and had a history of participating in his claimed religion before his incarceration. *See* Gagas declaration, ¶7.[7] Branch has not presented evidence which disputes the statements in Gagas' declaration nor has he demonstrated that his application for a haircut exemption was treated differently than that of any other prisoner. There are no disputed material facts precluding the grant of summary judgment in defendants' favor on this claim.

**IX.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRANCH'S RACIAL PROFILING CLAIM BECAUSE THE CLAIM WAS NOT INCLUDED IN HIS COMPLAINT.**

Branch claims that he has been subjected to racial profiling. In support of this claim, he says that he is black and that "all acts are racial". Plaintiff's Brief, p.8. Branch has also presented the affidavit of former prisoner Kevin Blow which states that corrections officers at SCI-Waymart, including defendant Russian "are prejudice[sic] against" African Americans and practice racial profiling.

---

[7] The Gagas Declaration is contained in Documents in Support of Defendants' Motion for Summary Judgment filed on December 31, 2003 as Appendix G.

16

There are insurmountable problems with this claim.  First of all, Branch did not include a claim of racial discrimination or "racial profiling" in his complaint. There are no facts which show Branch's race and no facts have been presented which permit a determination of what actions constitute racial discrimination. Therefore, that claim is not properly before this court for disposition.

## CONCLUSION

For all the forgoing reasons, defendants ask the Court to grant their motion for summary judgment on all the claims in Branch's complaint.

Respectfully submitted,

**GERALD PAPPERT**
**Attorney General**

By:    **s/GWENDOLYN T. MOSLEY**
**GWENDOLYN T. MOSLEY**
**Senior Deputy Attorney General**
**Attorney I.D. No. 29157**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Litigation Section**
**Harrisburg, PA 17120**
**(717) 787-1179**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**Counsel for Defendants**

**Dated: June 11, 2004**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| **WILLIAM BRANCH** | | : | |
| | | : | |
| | **Plaintiff** | : | **No. 1:00-CV-1728** |
| | | : | |
| **v.** | | : | **(Judge Conner)** |
| | | : | |
| **RUSSIAN, et al.,** | | : | |
| | | : | |
| | **Defendants** | : | **ELECTRONICALLY FILED** |

### CERTIFICATE OF SERVICE

I, Gwendolyn T. Mosley, Senior Deputy Attorney General for the

Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that

on June 11, 2004, I caused to be served a true and correct copy of the foregoing

document titled Defendants' Reply Brief, by depositing it in the United States

Mail, first-class postage prepaid to the following:

William Branch, CF 3756
SCI-Waymart
P.O. Box 256
Waymart, PA 18472

s/GWENDOLYN T. MOSLEY
**Gwendolyn T. Mosley**
**Senior Deputy Attorney General**