IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM BRANCH | : | |
| | : | |
| Plaintiff | : | No. 1:00-CV-1728 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| RUSSIAN, et al., | : | |
| | : | |
| Defendants | : | ELECTRONICALLY FILED |

## SUPPLEMENTAL DOCUMENTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## INDEX

Declaration of Lieutenant Larry Ellett                    Appendix L

Respectfully submitted,

GERALD PAPPERT
Attorney General

By:  s/GWENDOLYN T. MOSLEY
GWENDOLYN T. MOSLEY
Senior Deputy Attorney General
Attorney I.D. No. 29157

Office of Attorney General          SUSAN J. FORNEY
15th Floor, Strawberry Square       Chief Deputy Attorney General
Litigation Section                  Chief, Litigation Section
Harrisburg, PA 17120
(717) 787-1179                      Counsel for Defendants

Dated: June 11, 2004

**Appendix L**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM BRANCH | : |
| | : |
| Plaintiff | : No. 1:00-CV-1728 |
| | : |
| v. | : (Judge Conner) |
| | : |
| RUSSIAN, et al., | : |
| | : |
| Defendants | : ELECTRONICALLY FILED |

### DECLARATION OF LIEUTENANT LARRY ELLETT

I, Larry Ellett, do hereby state under penalty of perjury that the following is true and correct and based upon my personal knowledge:

1. I am employed by the Department of Corrections ("the Department") at the State Correctional Institution at Waymart ("SCI-Waymart") as the Security Lieutenant.

2. I attended the basic training course provided by the Department and have worked at SCI-Waymart since 1990.

3. Through my training and experience, I have become familiar with the Department's security practices and the reasons for those practices.

4. I have also become familiar with the rules governing the conduct of prisoners and the reasons for those rules.

5. The Department has determined that electrical outlets, screens, lighting fixtures, plumbing fixtures, beds, cabinets and cell bars which are not in good working order present serious threats to the health of prisoners and prison employees and to safety, security and proper management of a correctional facility.

6. For these reasons, corrections officers are assigned the tasks of conducting security inspections of the prisoner housing areas on a regular schedule. A security inspection is not considered a cell search; it is for the observation and physical testing of the structural components of the cell. Prisoner housing areas are subject to regular security inspection without regard to the identity of the prisoners who live in them. Security inspections are conducted whether or not the prisoners whose areas are affected file grievances or lawsuits.

7. Security inspections of prisoner living areas was for all times relevant to this lawsuit governed by Department of Correction Administrative Directive ("DC-ADM") 203, Part F. A true and correct copy of DC-ADM 203 is attached here as Exhibit 1.

SCI WAYMART SECURITY   Fax:570-488-2616   Jun  8 2004 15:08   P.04
06/08/2004  15:21  717-705-7240         OAG LITIGATION              PAGE  04

8. The Department has likewise determined that prisoners who do not obey the orders of corrections officers and who threaten those officers also present serious threats to the security of the prison and undermine its orderly operation.

9. Corrections officers are instructed to issue misconducts to those prisoners who do not obey their orders or who threaten them without regard to whether the prisoners have filed grievances or lawsuits against them or other prison officials or employees.

Date: 6-8-04                                    *Lt. Larry B. Ellet*
                                                LIEUTENANT LARRY ELLET

3

LOCATION:570 488 2616           RX TIME   06/08 '04 14:43



| Policy Subject: | Policy Number: |
|---|---|
| Searches of Inmates and Cells | DC-ADM 203 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| June 9, 2000 | *[signature]*<br>Martin F. Horn | July 10, 2000 |

## I. AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

It is the purpose of this policy to provide for searches of facilities and inmates to control contraband and provide for its disposition.[1]

## III. APPLICABILITY

This policy is applicable to all facilities, and inmates under the jurisdiction of the Department of Corrections.

## IV. DEFINITIONS

### A. Annual Search Plan

A plan developed to ensure that all areas other than inmate living quarters are searched a minimum of three (3) times a year.

### B. Body Cavity Searches

A body cavity search is a physical examination of an inmate's anal and/or genital cavity. Only a physician conducts this procedure.

---

[1] 3-4184

*DC-ADM 203 Searches of Inmates and Cells*  Page 2

### C. Cell Search

The search of areas, and their contents, identified as inmate living quarters includes secure cells, dormitory cubes, and infirmary quarters.

### D. Contraband

Contraband is defined by Department policy **DC-ADM 6.3.7, "Contraband Handling and Disposition"**, 18 P.S. §5123 and the local procedures of the individual facilities. Various types of contraband include but are not limited to: money, implements of escape, non-prescription drugs, drugs which are prescribed, but the inmate is not authorized to possess, drug paraphernalia, poisons, intoxicants, materials used for fermentation, property of another, weapons or other items which in the hands of an inmate present a threat to self, others or to the security of the facility.

### E. DC-154A

A form used to document items of evidence or contraband, confiscated from an inmate and as a means to provide the inmate with a receipt for those items.

### F. Department

The Pennsylvania Department of Corrections.

### G. Excessive Property

Any item(s) in the possession of an inmate or in an inmate's cell that is in excess of the limits established by Department policy, **DC-ADM 801, "Inmate Discipline," DC-ADM 802, "Administrative Custody Procedures," DC-ADM 803, "Inmate Mail and Incoming Publications," DC-ADM 811, "Basic Issue," DC-ADM 815, "Commissary Privileges," DC-ADM 610, "Food Service"** and any other applicable Department policy.

### H. General Search

The search of part or all of any area within a facility after an unusual incident or as part of the annual search plan.

### I. Investigative Cell Searches

A search conducted as part of an investigation.

### J. K-9 Search

A K-9 search is a search conducted by a trained narcotics detection K-9 and it's handler. The K-9 scans the air for suspected narcotics. The inmate may or may not be present for the search, in accordance with this policy.

### K. Random Search

A search of a randomly selected cell or cells.

*DC-ADM 203 Searches of Inmates and Cells*                                                                    *Page 3*

### L. Security Inspections of Inmate Cells

A security inspection is for the observation and physical testing of the structural components of the cell. Security inspections of inmate cells are not searches and are exempt from Section VI B of this directive.

## V. POLICY

It is the policy of the Department of Corrections to prohibit the introduction and presence of unauthorized weapons, drugs, and other contraband that presents serious threats to the security and proper management of a correctional facility by providing for searches of facilities and inmates to control contraband and provide for its disposition.[2]

## VI. PROCEDURES

Any contraband discovered on the grounds of Department property is subject to immediate seizure. It is the responsibility of each inmate to become familiar with the restrictions upon property permitted for inmates.

### A. General Searches

The Facility Manager or designee may order a general search of any/all areas of the facility after any unusual incident or as part of the annual search plan. Cell searches conducted under these conditions are subject to the provisions of Sections VI, (B), (1) and VI, (B), (2).

### B. Searches of Inmates' Cells

1. General Procedures

    a. Cell searches may be conducted as part of a general search, randomly selected or as needed as part of an investigation.

    b. During a cell search, all precautions will be taken to avoid damage to any items.

    c. Any item, which is contraband or evidence of a crime or misconduct, will be handled in accordance with Department policy **6.3.7, "Contraband Handling and Disposition."**

    d. When there is excessive personal property in a cell, the inmate owner may designate to whom such items are to be shipped. The inmate will pay the shipping cost. If this is not possible, such items will be removed and the inmate provided a copy of a written list of the items and their disposition. Confiscated money will be deposited in the Inmate General Welfare Fund. Excessive state issued items will be confiscated by the facility for appropriate disposition. Disposition may include returning the items to the facility's inventory for issue to another inmate, or the submittal of a misconduct report if the items are have been altered or otherwise deemed unusable. A DC-154A will only be used to record all confiscated non-state issued items and for those which are the subject of a misconduct.

---

[2] ACI 3-4184

*DC-ADM 203 Searches of Inmates and Cells*   Page 4

      e. To minimize the possibility of an inmate's radio, television, or typewriter being lost or stolen, the facility provides a means to engrave the items with the inmate's committed name and DC-number. Due to the variations in design of these items, the engraving will be placed at a readily visible location on the back of the items. All radios, televisions, and typewriters must be so engraved. When any of these items are not so engraved, the item may be confiscated until true ownership can be determined. The item will then be properly engraved and returned to the owner.

      f. Confiscated property will be handled in accordance with Department policy **6.8.2, "Property Handling and Disposition."**

2. Presence of Inmate During a Cell Search

   The inmate is permitted to be present whenever his/her cell is searched UNLESS the ranking officer conducting the search determines:

   a. the presence of the inmate would present an immediate threat to staff, other inmates, or the security of the facility;

   b. the search is being conducted under emergency conditions; or

   c. the inmate's presence will impair an ongoing investigation of criminal activity or violation of facility regulations. Such determination by the ranking officer will be in writing, setting forth the factual basis for this determination.

## C. Random Cell Searches

1. The Intelligence Captain or designee is responsible for coordinating random cell search efforts and maintaining the centralized documentation/logs for all cell searches.

2. Random cell searches will generally be performed by Search Team members assigned to the Security Office, but may be performed by other staff as directed by the Intelligence Captain or designee.

3. Random searches may be conducted at any time but no later than one hour after the facility is locked up for the evening.

4. Before the search, the Unit Officer will notify the inmate whose cell has been randomly chosen and the inmate shall be given the option of remaining during the search.

   a. An inmate whose cell has been randomly chosen will be asked to sign a record to show that he/she was present during the search or, if he/she chooses not to be present, to show that he/she wishes not to be present.

   b. If an inmate refuses to sign the record, the officer will note his/her refusal on the record.

*DC-ADM 203 Searches of Inmates and Cells*  Page 5

### D. Investigative Cell Search

Investigative cell searches require a reasonable suspicion the inmate is concealing contraband or involved in other activity, which potentially threatens the security of the facility. Investigative searches require the prior approval of the Shift Commander, Security Office Supervisor, or higher-ranking authority. The inmate may be present during an investigative search except as provided by Section VI, B, 2.

### E. K-9 Inspection

The use of a narcotics detection K-9 to scan a cell for narcotics may be done without the presence of the assigned inmate. The K-9 scans the air to detect the possible presence of narcotics (this is not an actual search). If contraband is suspected, the proper procedure for a cell search should be followed.

### F. Security Cell Inspection

A security inspection is to be conducted by facility personnel for health, safety, and security reasons. A security inspection is for the observation and physical testing of the structural components of the cell, such as doors, windows, bars, electrical fixtures, and plumbing. Inmate personal property will not be searched or disturbed during a security inspection except to the extent necessary to gain access to the structural components of the cell. Presence of the inmate occupant(s) is not required during a security inspection.

### G. Searches of Inmate's Person

All inmates are subject to search at any time. Staff personnel of either sex may conduct pat searches in any area of the facility. They will be conducted in a professional manner with tact and proper attitude displayed.

1. Pat Search

    All inmates are required to comply with the following procedures when being pat searched:

    a. the removal of all items from pockets and placing them in a hat or on a shelf, desk, or other suitable place;

    b. standing still with his/her feet apart and arms extended outward, palms upward; and

    c. following the verbal direction given by the staff member conducting the search.

2. Strip Search

    a. A strip search shall be conducted when necessary for the security and good order of the facility, including the following situations:

        (1) before and after every contact visit;

        (2) upon an inmate's return from outside activities, supervised outside leave and furloughs;

**DC-ADM 203 Searches of Inmates and Cells**                                                    Page 6

   (3) upon reception, return from court and return after inmate has left the facility reservation for any reason;

   (4) following activities where inmates have the opportunity to mingle with outside groups, particularly where there are large numbers of people under minimal supervision;

   (5) periodically for inmates who are permitted to move in and out of the gate areas;

   (6) when there is reason to believe that an inmate is in an escape plot or possession of contraband;

   (7) when an inmate enters or leaves any restricted area;

   (8) when an inmate is admitted/discharged from a RHU, SMU, or MHU; and

   (9) prior to being transported outside the secure perimeter.

 b. Strip searches should be conducted in an area separate from other inmates and to assure privacy and minimum embarrassment. Absent exigent circumstances, same sex correctional personnel shall search inmates. The staff person conducting the search will avoid touching the inmate except as required to control the inmate. The search shall be conducted in a tactful, professional manner.

 All inmates are required to comply with the following procedures when being strip searched:

   (1) remove all items from pockets and place them in a hat, on a shelf, desk, or other suitable place;

   (2) remove all articles of clothing;

   (3) stand still with feet apart and arms extended outward, palms up; and

   (4) follow the verbal direction given by searching staff member.

3. Body Cavity Search

Body cavity searches of inmates will be conducted when there is reasonable belief that the inmate is in possession of contraband. Body cavity searches may be authorized by the Facility Manager, or his/her designee, when it has been determined that there is imminent danger to an inmate's health or facility safety and then only as a means of last resort.

## H. Staff Procedures

All pertinent staff procedures for the conducting of searches and security cell inspections are contained in Department policy **6.3.1, "Facility Security."**

*DC-ADM 203 Searches of Inmates and Cells*  Page 7

## VII. SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary, or designee may suspend any provision or section of this policy, for a specific period.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## IX. RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A. Release of Information

1. Policy

   This policy document is public information and may be released to members of the public, staff, legislative, judicial, law enforcement and correctional agencies and/or inmates upon request.

2. Procedure Manual (if applicable)

   The procedure manual for this policy is <u>not public information</u> and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee. This manual or parts thereof, may be released to any Department of Corrections employee on an as needed basis.

### B. Distribution of Policy

1. General Distribution

   The Department of Corrections' policy and procedure manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

2. Distribution to Staff

   It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM BRANCH              :
                            :
            Plaintiff       : No. 1:00-CV-1728
                            :
        v.                  : (Judge Conner)
                            :
RUSSIAN, et al.,            :
                            :
            Defendants      : ELECTRONICALLY FILED

## CERTIFICATE OF SERVICE

I, Gwendolyn T. Mosley, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on June 11, 2004, I caused to be served a true and correct copy of the foregoing document titled Supplemental Documents in Support of Defendants' Motion for Summary Judgment, by depositing it in the United States Mail, first-class postage prepaid to the following:

William Branch, CF 3756
SCI-Waymart
P.O. Box 256
Waymart, PA 18472

                                                s/GWENDOLYN T. MOSLEY
                                                **Gwendolyn T. Mosley**
                                                **Senior Deputy Attorney General**