*Judge Conner*

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM R. BRANCH, | ) | CIVIL ACTION NO. 1:00-CV-1728 |
| Plaintiff | ) | (Judge Conner) |
| | ) | |
| v. | ) | |
| | ) | |
| MR. RUSSIAN, et al., | ) | |
| Defendants | ) | |

**FILED**
HARRISBURG, PA

MAR 2 3 2005

MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

MEMORANDUM *Brief in support of motion To Reconsider Part II Summary Judgement*

The District Court committed a judicial error by granting defendants' (officials and employees of the Pennsylvania Department of Corrections) Motion For Summary Judgement against Plaintiff, William R. Branch, a prisoner of the State Corrections Institution at Waymart, Pennsylvania, concerning his claims pursuant 42 U.S.C. §1983. The motion should not have been granted in favor of the defendants for the following reasons:

I.    Summary Judgement Rule is not an appropriate procedure to resolve disputed issues of facts, credibility or merits.

The claims asserted by Branch implicates a series of incidents involving numerous individuals over the course of several years of incarceration at the same prison. In February 2000, while employed in the Staff Dining Room, Branch received a misconduct from Julie Suchy, a kitchen steward, in retaliation for a pending lawsuit against her long time co-worker and close friend, Tony Fabricatore. As a result of the misconduct Branch lost his high profile, well paying position in the staff kitchen. The misconduct also contributed to the denial of parole for Branch. He lodged internal grievances against Suchy for her retaliatory misconduct.

Shortly after this incident, while housed on Block M-2, C.O. Russian began verbally, psychologically, and physically harassing Branch because of his lawsuits and grievances against friends and co-workers at the prison. Branch sought relief from the continued harassment by complaining to Russian's superiors. When that avenue failed, in July 2000, Branch filed a grievance. Russian retaliated by ranshacking Branch's personal property under the guise of safety and security checks.

Safety and security checks are suppose to be conducted randomly. Also, the policy governing the checks implicitly states that no personal property will be physically disturbed during these checks which are intended to inspect prison property for defects and safety. If performed correctly, the searches are few and far between without disturbing the property of the prisoner being checked. However, Russian perverted the intention of the checks, using them to harass and torture Branch.

In addition to the unlawful searches, Russian altered the times for inmate laundry turn-in. He specifically targeted Branch and prevented him from exchanging his dirty laundry for cleaning. Russian loudly ridiculed and verbally attacked Branch embarrassing him in front of other prisoners. When this abusive, retaliatory behavior did not coerce Branch into withdrawing his legal actions, Russian falsified a misconduct causing Branch to be placed in the R.H.U. for forty-five (45) days. This R.H.U. placement was a direct response to Branch's continued reporting of staff misconduct to their superiors and lodging formal grievances against Russian and his friends.

While in the R.H.U. the harassment, retaliatory actions, and verbal abuse intensified in an effort to break Branch's resolve and force him to withdraw his pending internal grievances and lawsuits against prison employees. These continued retaliatory acts violated Branch's constitutional right to file internal grievances and lodge civil suits against prison staff. This vicious cycle of retaliatory behavior and intimidation tactics continued after Branch's released from the R.H.U., resulting in more grievances, lawsuits, and defendants in Branch's ongoing quest for relief.

The long line of claims and facts underlying this case are well known, making it pointless to repeat them at this time. Here, Branch merely attempts to establish the existence of issues which should have been decided by a jury, not through summary judgement.

The federal rule relating to summary judgement was intended to grant relief where the facts appear certain, and it should not be granted where facts are uncertain, where conspiracy has been alleged, or where case will turn on credibility determinations and/or state of mind. See Federal Rules Civil Procedure, Rule 56, 28 U.S.C.A. Furthermore, summary judgements should be entered sparingly, so that no party having a scintilla of merit to claim or defense is denied his day in court. In re Freeman, 68 B.R. 904 (M.D.Pa. 1987).

I can prove That c/o RUSSian and mr Friedmans action were motivated to Retaliate and Punish by his own statement. See his initial Response to grievance WAM-0232-00 Dated 8-3-00 found in Exhibit 44b stated "because you" "Protested". my Right to protest (mean Reporting misconduct) is a protected Right to petition the government for Redress. Viewing in favor of None moving Party. Summary Judgement is ~~inappro~~ inapropriate ~~where case~~ Credibility is at issue



Despite the numerous claims, incidents, and defendants amassed over approximately ten (10) years of imprisonment, the temporal proximity of incident upon incident, and the accusations of conspiracy the Court still granted summary judgement. However, within the facts contained in the extensive court proceedings and records, surely a "scintilla of merit" exists. These material, disputed facts should have been decided by a jury.

Waymart is a prison miles and hours away from other prisons and impartial administrative authorities. Once a state mental hospital, it has retained many of its former employers who instill the "old ways" of mental, psychological, and emotional "discipline". It has been the major employer to the area for nearly a century, and the majority of its employees live minutes away. They act as a close knit "family" who protect and look out for each other. In their eyes, they work in what amounts to a family business where husband, wife, son, daughter, aunts uncles, and grandparents work, or once worked, together.

The prisoners, on the other hand, are strangers: intruders to this community. If one of the "outsiders" like Branch threatens a "family member" everyone joins in the fight. Common sense suggest that a prisoner in this isolated environment, so far away from his own family, would be met with retaliatory and conspiratorial action when challenging the status quo. Here, as in Rauser v. Brown, 241 F.3d 330 (3rd Cir. 2001), "the relevant question is not whether [Plaintiff] had a protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right."

In ruling on motive for summary judgement district court makes only the determination as to whether there exists substantial and genuine issues of fact[.] Jackson v. Werner, 394 F.Supp. 805 (W.D.Pa. 1975). Summary judgement is seldom appropriate when conspiracy is alleged, Mihalich v. Com. of Pa., 608 F.Supp. 525 (1985), or where credibility issues exist, Young v. Quinlan, 960 F.2d 351. Furthermore, summary judgement should never be granted if there remains any doubts or if disputed facts exist because the "summary judgement is not a trial on merits, and court should not attempt to resolve conflicting contentions of fact; opposing party is not required to show he will prevail at trial, but is only required to show that there is genuine issue to be tried. International Latex Corp. v. Lexicon Products, Inc., 37 F.R.D. 524 (1965).

Waymart's "us against the world" mentality, coupled with its close knit family environment supports Branch's claims of a long existing conspiracy of retaliation against him for exercising his constitutional right to lodge lawsuits and grievances against prison staff. These motive and credibility issues deserve to be settled by an impartial trier of facts, not a summary motion which deprives Branch of his day in court. The district court inappropriately granted summary judgement where claims exist which should have been settled by a jury.

II. Summary Judgement Rule is not an appropriate procedure where existing evidence established connection between Plaintiff's constitutionally protected rights and defendants adverse actions.

In the absence of direct evidence or admissions of retaliatory intentions, prisoners must establish a casual connection between their constitutionally protected right and adverse action by defendants. Farrell v. Plant Lifesavers Company, 206 F.3d 271 (3rd Cir. 2000). The Third Circuit has identified several factors relevant to establishing a successful retaliatory inquiry. The existence of **"temporal proximity"**, **"intervening antagonism"**, and **"inconsistent reasons"** between the exercise of a protected right and an adverse action suggest retaliatory motivation. ID @ 280. However, while these three factors are relevant in determining whether a causal link exists, the court must be "willing to explore the record in search of evidence"; this case law sets forth no limits on what the court is "willing to consider." Farrell @ 281.

In the instant case, "the defendants do not dispute that Branch can satisfy the first and second prong of the Rauser criteria with respect to defendants Russian, Surace, Gagas, Gavin, Walsh, and Wilbur." (Defendant's Brief in Support of Motion For Summary Judgement, page 19). "Branch, however, cannot establish a casual link between his protected activities and the adverse actions he claims occurred as a consequence of them." ID. Contrary to this denial of the existence of a causal link, the evidence and court record says differently.

The courts have recognized that Branch's conduct, the filing of lawsuits and grievances, are protected activities pursuant the United States Constitution. See Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000); Allah v. Hafeez, 208 F.Supp.2d 520, 535 (E.D.Pa. 2002); and Hill v. Blum, 916 F.Supp. 473-74 (ED.Pa. 1996). He filed a lawsuit against a kitchen steward, Fabricatore, while employed in the prison's staff dining room. While this lawsuit was still active, Fabricatore's friend and kitchen co-worker Suchy issued a questionable misconduct report against Branch. As a direct result of this misconduct Branch was fired from his plush, well paying kitchen position AND his parole application was denied. After exhausting administrative remedies Branch filed a lawsuit against Suchy.

MS Surace also issued a misconduct cousing me to Lose my Job in 1997 while fabricators lawsuit was pending also fabricatores close friend she went so far as to [strikethrough] order my Layin, then 5 days Latter wrote a misconduct that I was absent withou excuse. I was fired by the Hearing Examiner. What penological interest does this action serve, NONE. The PRC committee Reversed the Hearing Examiner, But Ms. Surace Motivation was Retaliation for me Petitioning the Government for Redress as was Ms Suchy! viewing in favor of Nonemoving Party

Then, while Branch was housed on M-2, Russian began harassing him, advising him that the "fix" was in and for him to withdraw the lawsuits against the prison staff. Branch was also ordered to to stop filing grievances, lawsuits, and complaining to prison supervisors concerning staff conduct. When Branch persisted in exercising his right to seek redress against staff misconduct, Russian falsified a misconduct and placed Branch in the R.H.U. for forty-five (45) days. While in the R.H.U. the harassment and intimidation tactics intensified, and Branch's medically prescribed special diet was tampered with; jeopardizing his health.

Upon release from the R.H.U. he was forced to cut his hair, despite his religious practice which forbade him from doing so. Branch was shuffled from job to job, block to block, and bunk to bunk. As a non-smoker, he was forcibly housed on smoking blocks, again jeopardizing his health. The chain of grievances, lawsuits, and defendants lengthened proportionally with each new retaliatory act. The vicious cycle of harassment was an attempted to force Branch from exercising a constitutional right, as well as to punish him for doing so. The "intentional harassment of even the most harden criminals cannot be tolerated by a civilized society." Chief Justice Burger, Hudson v. Palmer, 468 U.S. 517 (1984).

In Rauser v. Brown, 241 F.3d 330 (3rd Cir. 2001)the Third Circuit held that the denial of parole or firing from high paying prison job was sufficiently adverse to deter a prisoner from exercising his constitutional rights. Also, R.H.U. confinement, loss of privileges, harassment, physical threats, and interference of religious freedom are adverse actions at the hands of prison officials which rise to the "adverse action" standard necessary for retaliatory claims. See Thaddeus-X v. Blatter, 175 F.3d 378; Allah v. Seiverling, 229 F.3d 220 (3rd Cir. 2000); and Abu-Jamal v. Price, 154 F.3d 128 (3rd Cir. 1998).

Branch easily establishes that the conduct which led to the retaliation was constitutionally protected. Secondly, he has shown that he has suffered "adverse actions" at the hands of prison officials. However, unlike the first and second prongs, the third prong,, causal connection, is a question of fact, where the fact-finder must make credibility judgements concerning the reasoning behind the actions of prison officials. This element cannot be decided by a summary judgement.

Therefore, a material issue, did the defendants work under the color of the law to violate Branch's constitutional rights is not a matter for summary judgement, but one to be determined in a trial. Another material issue, was Branch's rights violated by his denial of parole, is another issue which must be decided by a jury. And, finally, any retribution visited upon a prisoner due to his decision to engage in protected conduct is sufficient to claim unlawful retaliation at the hands of state officials, and not subject to summary judgement. See Rhodes v. Robinson, 380 F.2d 1123 (9th Cir. 2004).

Since the Granting of Summary Judgement Ms Surace my Bose at the Garment Plant has been attacking me as I have been preparing for my motion on Reconsideration on 2/7/05 Ms Surace drove my Blood pressure up to 185/110 I had To Leave work to go to medical the put me on Blood pressure watch and these attack are continuing thro Ms. Dippel and on monday the 14th of march Ms. Dippel wrote me up Misconduct #275021 A:class/ charge #33 use of abusive, obscene, or inappropriate language to an employee B:class/ charge #35 Refusing to obey an order. Ms Dippel told me to take the chairs of the table I explained that the inmates had not finished sweeping, she began yelling don't tell me anything, so I Took the chairs and table down. Then She Said "Why did you put the chairs and tables in the Trash, I am going to Lay you in." I said I am going to speak with Mr Biko, her Bose, it was time to leave and I went to speak with him, enter Ms Surace, what do you want as I tried to speak with Mr Biko. you have to tell me first she stated. Come with me, We went Back To Ms Dippel and she asked her what happen Ms Dippel Responded Ms Surace said write him up and Refused to allow me to speak with Mr Biko, and sent Ms Dippel in to see Mr Biko to protect her from my grievance of the way they have been Treating me.

The Right to be free from Retaliation is clearly established Baldas-Sabe 250 F.3d at 201. See also atkinso vs taylor, 316 F.3d 257, 269-70 (3rd cir 2003) (the Right to ~~petition~~ be free from Retaliation for exercising Right to petition for Redress); Larsen vs. Senate of commonwealth of Pa- 154 F.3d 82, 95 (3rd cir 1998) Right to be free from Retaliation for engaging in protected speech):

Page 7.

| Form DC-135A<br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>**INSTRUCTIONS**<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| 1. To: (Name and Title of Officer)<br>Supt. Calleran | 2. Date:<br>3-14-05 |
| 3. By: (Print Inmate Name and Number)<br>Wm Branch CF3756<br><br>William Branch<br>Inmate Signature | 4. Counselor's Name<br>Ms Skutack |
| | 5. Unit Manager's Name<br>Ms Elliet |
| 6. Work Assignment<br>Garment Plant | 7. Housing Assignment<br>M-1 |

8. Subject: State your request completely but briefly. Give details.

SIR today I was given a misconduct By Ms Dippel at 2:30 she told me to put the chairs and table off the top of the work stations, when I Explained that the Trash had to be gotten up she became angry and began to shout I don't want to hear it take the chairs down, when I Took them down she said you put them in the trash going on to say I am going to Lay you in so don't come Back.

I Replied I am going to speak with me Biko, it was time to leave and I tried to see him Ms Surace stopped me and said I have to tell her first, I did we walked Back to Ms Dippel I stood off they talked Ms Surace told her to write me up. I was not allow to speak with MR Biko

Please note I Reported a staff member who was going to Lay me in unfairly

Ms Surace told her to cover her Back and write me up

This write up is Being done in Retaliation for Reporting Wrong doing of a staff member. Please help me my Job Record has been Good I just Recieved a Raise, and I am Respectfull to all staff and I don't use abusive language. I work thru my Break, I tell other inmates to Respect staff I have tried very hard to be Ms Dippels friend, I have been working for 1yr 4 months, Ms Surace has been attacking me and drove my Blood Pressior up to 185/110 on 2-7-05 I had to leave to go to medical and when I told Raff I would not be back at 12:25 (I went to the Job) she Tried to write me up

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

SIR I am about to leave here in april I need the money going home and all, I Respectfully ask that you allow me to finish my Time out at work I will apologise ms Dippel and if she has any thoughts that I am not following her smallest order I will quit Respectfully

Staff Member Name _____ Print _____ Sign _____ Date _____

Revised July 2000

Page 8

Exhibit pass Shows what happen at medical and the 5 day watch

MEDICATION PASS RECORD

| Medication | Start | Stop | Med Line / Initial |
|---|---|---|---|

2-7-05  mon    185/110
        Tues   140/100
        wed    150/ 90
        thur   135/ 80
        fRi    150/ 100
        Sat    16/ 100

Page 9.

When I took off from work in 1997 I explained to the court that I had spoken to Mr Friedman Mr Long and Ms Surace and Mr Cribbs inmate employment.

When I was wrote up By Ms Surace None of these staff members spoke up they allowed the misconduct to go forth and for me to be sanction by the Hearing. and then the Reason they Reversed was because my Block officer Mr Obelious Log the Layin in the Log Book. Inclose Please See Exhibit Request to Mr Cribbs from me Explaining that I would be taking off from work, please Note there is No mention that this action was considered an unauthorized action, his Reply state:

"Bottom line is No Work No Pay!" and on the second write up Ms Surace used these absence as and ongoing thing which was upheld and I was sanction for No one stepped forward I say that the write up was predicated on a Lie; thereby demonstrating a agreement by the staff to punish me for exercising my constitutional Right to petition the government for Redress. What was Ms Surace and the other staff members motive?

What legitimate penological interest does this serve viewing this in a light favoring the Nonemoving party

Millhouse Vs. Carlson 652 f2d 371, 373-74 (3rd cir 1981) (disciplinary action for instituting a lawsuit Reversed and Remaned) also stating:" a liberal construction of a pro se complaint "Requires that the Judge view all of [the] allegations Not as isolated incidents, but Rather as a Unit"

As to the Statue of Limitations, Legal action was started in the filing of a motion to order injunction and to add Defendants to my 1983 claim this tolls the Statue of limitations See: Docked Sheet of Brown Vs. Fabricatore No 96-7498 in the US Court of appeal third circuit.

Page 10
MS Surface

| DC-135A | COMMONWEALTH OF PENNSYLVANIA |
|---------|------------------------------|

**DEPARTMENT OF CORRECTIONS**

**INMATE'S REQUEST TO STAFF MEMBER**

**INSTRUCTIONS**

Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.

1. TO: (NAME AND TITLE OF OFFICER) Mr Cribbs   Employment
2. DATE 9-8-97
3. BY: (INSTITUTIONAL NAME AND NUMBER) William Branch   CF-3756
4. COUNSELOR'S NAME Mr Zorg
5. WORK ASSIGNMENT Garment Plant
6. QUARTERS ASSIGNMENT M-2

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

Sir: I have received a court order to have my Brief in by 10-6-97, as you Know when a inmate exercise his constitutional right of access to court, there is to be help from the prison and no Retaliation: When the court orders a inmate to do a program and he has to take time off from a job he is payed (con't) as if he worked on the job, by me having to take time off to meet a court order I am to be payed. if I am not pay I will suffer because of my exercising my constitutional right/court order. I am asking you to looking into this matter as a act of prevention. I await your reply. Thank you.

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Bottom Line Is No Work No Pay!

☐ TO DC-14 CAR ONLY          ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER                                DATE

Similarly, subjecting Branch to maliciously motivated searches instituted not for security needs, but for harassment; charging him with misconducts; denying his parole; placing him in the R.H.U.; and interfering with the exercise of his religion for no legitimate reasons constitute adverse action which were improperly decided on through summary judgement. See Hudson, supra, and Smith v. Mensinger, 293 F.3d 641, 653 (3rd Cir. 2002). Attorney General Mosely incorrectly asserts that "Branch cannot establish a causal link between his protected activities and the adverse actions he claims occurred as a consequence of them." However, the mere allegation of "retaliation" is sufficient to establish casual linkage. See Mitchell v. Horn, 318 F.3d 523 (3rd Cir. 2003).

A prisoner can survive a motion for summary judgement on his claim that prison official **retaliated** against him for his "use of the inmate grievance system and previous lawsuits". Mitchell. "Moreover,...several months in disciplinary confinement would deter a reasonable firm prisoner from exercising his first amendment rights. Finally, we agree with Mitchell that the word 'retaliation' in his complaint sufficiently implies a casual link between his complaint and the misconduct charges filed against him." 318 F.3d @ 530.

Beginning with the lawsuit against Fabricatore and progressing to falsified misconduct by Suchy that led to loss of prison job and parole denial, to Russian using safety and security checks as harassment tools before falsifying a misconduct report that place Branch in the R.H.U. for forty-five (45) days, clear through all the other defendants who pooled their efforts and resources in a concerted conspiracy to retaliate against Plaintiff for exercising his constitutional right to file grievances and lawsuits against prison staff, causal connection is established. Since Branch was able to establish the first three prongs of the Rauser criteria, the burden now shifts to the defendants to rebut the presumption of retaliation by producing evidence that, absent Branch's constitutionally protected conduct, they had legitimate non-retaliatory penological reasons for taking their adverse actions. Rauser @ 333. This cannot be accomplished pursuant a summary judgement, which must be reversed.

CONCLUSION

**AND NOW**, for all the reasons set forth in this Memorandum, Plaintiff, William R. Branch, pro se, respectfully requests this Honorable Court for an **ORDER** directing that the district court's granting of summary judgement in favor of the defendants be reversed and his civil complaint be allowed to proceed to trial to be decided upon based on the merits of the issues.

at my last parole Hearing Lt welling went in before my interview, I was denied parole, as a Defendant in my law suit, he had no Right to give input in the denying or granting of Parole.

the denying me Parole because I filed a suit for violations of my constitutional rights, there was a genuine issue of material fact, precluding summary Judgement

Federal Civil Procedure Key 2491.5

in Rhodes Vs Robinson 380 F 3d 1123 (9th cir 2-04)

[10] constitutional Law Key 82(13) any Retribution visited upon a Prisoner due to his decision to engage in protected conduct is Sufficient to ground a claim of unlawful first amendment Retaliation whether such detriment chills the plaintiffs exercise of his first amendment or not  usca const amend 1

MD Pa 1996  Summary Judgement will not lie if evidence is Such that Reasonable Jury Could Return verdict for Nonmoving Party

fed Rules Civ. Proc Rule 56(c)  28 USCA

Bank Vs Lackawanna County Com'RS 931 F Supp 359

Respectfully I ask your Honor to Look at this case in its entire.  I pRay.
PROOF OF SERVICE

SDA+ MB Mosley esg- 15th+ Strawberry Sg Harrisburg Pa 17120
Judge Conner  P: Box 483 Harrisburg Pa 17108

UNSWORN DECLARATION
I affirm under Penalty of the Law that the above is True.

Date  3-16-05

William Beach CF-3256
Po Box 256
Waymart Pa 18472



U.S. POSTAGE $0.60

MAR 21 2005 PA

Name & No. CF3756 Branch
P.O. Box 256
Waymart, PA 18472-0256

INMATE MAIL
PA DEPARTMENT OF CORRECTIONS

Judge Conner
Po Box 983
Harrisburg Pa 17108